263 A.2d 104.

VINCENT R. BROWN *vs.* JOHN F. SHARKEY, *Acting Warden*

MARCH 16, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a habeas corpus proceeding in which the petitioner challenges his detention by the respondent warden under an extradition warrant issued on November 10, 1969 by the Lieutenant Governor of Rhode Island upon the request of the Governor of Connecticut.

The documents submitted by the State of Connecticut in support of its extradition requisition show that petitioner failed to appear at the Superior Court for New London County in Norwich when his case was called for trial on September 25, 1968. At that time there were two charges pending against petitioner: attempted breaking and entering and the possession in the night of burglar tools.

The crime for which extradition is sought was petitioner's failure to appear according to promise or bond, a violation of sec. 53-154 of the General Statutes of Connecticut, 1958 Revision, as amended. It reads as follows:

"Failure to appear according to promise or bond. Any person who, while charged with the commission of a criminal offense and while released pending appearance in court, wilfully fails to appear when legally called according to the terms of his written promise to appear or his bond, without or with surety, shall, if the offense with which he is charged is a felony, be guilty of a felony and shall be fined not more than one thousand dollars or imprisoned not more than five years or both, or, if the offense with which he is charged is

a misdemeanor, he shall be guilty of a misdemeanor and shall be fined not more than five hundred dollars or imprisoned not more than one year, or both."

The petitioner contends that the Rhode Island rendition warrant is defective as a matter of law because the very essence of the crime charged in the demand for extradition is such that it could not have been committed within Connecticut. The petitioner further argues that the Lieutenant Governor did not have the power to issue the rendition warrant. Finally, petitioner also claims that he should not be extradited for two reasons: (1) Connecticut has instituted these extradition proceedings solely because it seeks to collect a debt, and (2) the Connecticut statute is unconstitutional. We see no validity to any of the propositions propounded by petitioner.

Extradition is not a matter of comity or compact between the states. It is mandated by article IV, sec. 2, clause 2, of the United States Constitution which states:

"A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

The method and the manner in which this constitutional requirement is enforced may be found in 18 U. S. C. A., §3182, which imposes on the executive authority of the state in which a fugitive may be found the duty of causing him to be apprehended and delivered to an agent of the demanding state upon a valid requisition of the executive authority of the latter state.

It is the constitutional duty of an asylum state to enforce the Constitution's interstate rendition clause faithfully. The Supreme Court in *South Carolina* v. *Bailey,* 289 U. S. 412, 53 S.Ct 667, 77 L.Ed. 1292 said:

"* * * [A] faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugi-

tives from justice is vital to the harmony and welfare of the States, and that 'while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted so as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.' "

The Uniform Criminal Extradition Act was drafted to implement the constitutional requirements of article IV and to set forth procedures to be followed in this area of the law. Rhode Island adopted the Uniform Act in 1947 and it is now known and cited as G. L. 1956, chap. 9 of title 12.

Section 12-9-12 affords an alleged fugitive an opportunity to test the validity of his arrest by applying for a writ of habeas corpus.[1] The scope of judicial review in such a case

---

[1] A check of the records of the Superior Court discloses that in October 1969, petitioner challenged the sufficiency of an earlier rendition warrant which had been issued on October 6, 1969 by the Governor of Rhode Island in response to the demand of Connecticut. On November 7, 1969, the Superior Court granted this petition on the belief that bail jumping was a misdemeanor under Connecticut law and that a misdemeanor was non-extraditable. The trial court was mistaken in this view. It is clear petitioner was charged with a felony. However, even if he had been charged with a misdemeanor, a misdemeanor is "a crime" within the meaning of the interstate rendition clause of the federal constitution. See *Kentucky* v. *Dennison,* 24 How. 66, 65 U. S. 66, 16 L.Ed. 717. Despite his success in the Superior Court, petitioner was not released from custody because he was also being held at the Adult Correctional Institutions for lack of bail on two charges brought by the Rhode Island State Police relating to petitioner's alleged unlawful possession of a firearm. The warrant which is the subject of this proceeding was then issued by the Lieutenant Governor. The petitioner questioned the legality of the second warrant by filing a habeas petition in the Superior Court. This petition was denied and extradition was ordered. A stay of the order was granted so that petitioner could file the instant petition in this court. Since the Supreme and Superior Courts have concurrent jurisdiction to hear habeas petitions, we consider the present petition on a de novo, not an appellate, basis.

is limited. By the terms of the Uniform Criminal Extradition Act, the courts may not determine the guilt or innocence of the accused. The court when considering the habeas petition is limited to an inquiry as to whether the petitioner is charged with a crime in the demanding state; whether the petitioner is in fact the person charged with this crime; whether the petitioner was in the demanding state at the time of the crime, left, and was found in the asylum state; and whether the requisition papers are in order. *Poulin* v. *Bonenfant*, Me., 251 A.2d 436.

The Governor of Rhode Island, when he issues a rendition warrant ordering Rhode Island authorities to arrest a fugitive and deliver him to the agents of a demanding state, is acting in a quasi-judicial capacity. *Poulin* v. *Bonenfant*, *supra; Ex Parte Moyer*, 12 Idaho 250, 85 P. 897. When the Governor's warrant is regular on its face, it is prima facie evidence of the existence of every jurisdictional fact which the Governor was obligated to determine before he issued the rendition warrant. *Fox* v. *People*, 161 Colo. 163, 420 P.2d 412; *Wade* v. *Lovellette*, 251 Ind. 97, 239 N.E.2d 585; *Murphy, Petitioner*, 321 Mass. 206, 72 N.E.2d 413. In this cause, the November 10, 1969 warrant is prima facie proof that petitioner was in Connecticut at the time of the offense with which he is charged. The burden of answering such a prima facie case rests upon the accused. *People* v. *Lynch*, 16 Ill.2d 380, 158 N.E.2d 60. He may submit proof which, if conclusive, will rebut the prima facie showing by the Governor and entitle him to his release. 2 Underhill, *Criminal Evidence*, §565, at 1408; *Ross* v. *Hegstrom*, 157 Conn. 403, 254 A.2d 556.

The petitioner has offered no evidence as to his whereabouts on September 25, 1968. The mere fact that he did not appear at court in Norwich does not mean that petitioner was not within the State of Connecticut on the day in question. There is not one scintilla of evidence before

us to dispute the finding in the rendition warrant that petitioner was in Connecticut on September 25, 1968.

There is little merit to petitioner's protestations that the Lieutenant Governor had no authority to execute the rendition warrant. Section 12-9-2 states that whenever the term "governor" is used in the act, it shall include any person authorized by law to perform the functions of the Governor. The Rhode Island Constitution provides that in case of a vacancy in the office of Governor or because of his inability to serve, impeachment, or absence from the state, the power and authority of the Governor shall devolve upon the Lieutenant Governor. In absence of any evidence to the contrary, we shall presume that a public official such as the Lieutenant Governor shall exercise his powers in accordance with the laws governing his office and that he signed the warrant only because of the Governor's inability to do so because of one of the contingencies set forth in article VII, sec. 9. *Cole* v. *Zoning Board of Review*, 102 R. I. 498, 231 A.2d 775. If petitioner wished to contest the Lieutenant Governor's authority to sign the disputed document, it was incumbent on him to show that on November 10, 1969, the Governor was capable of performing his duties as the state's chief executive.

Among the documents in the record before us is a request made by the assistant state's attorney for New London County to the Governor of Connecticut that he commence extradition proceedings against the petitioner. In his request to the Governor, the attorney in complying with §12-9-26 specifically states that the extradition proceedings were not being instituted for the purpose of enforcing a debt. We are aware that where a request for extradition is sought for the purpose of collecting a private debt, it has been held to be within the discretionary power of the Governor of the asylum state to refuse such a request. See 94 A.L.R. 1493. However, we are quite conscious of the re-

stricted role we play in enforcing the constitutional requirement that fugitives be returned to the state which seeks their return. We shall not inquire into the merits of the charge against the petitioner nor shall we question the good faith of the demanding State of Connecticut. The scheme of interstate rendition of prisoners established by the Constitution and by implementing statutes "* * * contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him." *Sweeney* v. *Woodall,* 344 U. S. 86, 90, 73 S.Ct. 139, 141, 97 L.Ed. 114, 118. It is fundamental to our federal system that neither the courts of the asylum state, nor federal courts sitting in that state, seek to determine the constitutionality of the prosecution in the state from which a fugitive has fled. This is the task of the courts in the demanding state. Should the petitioner be denied relief in the Connecticut courts, he is entitled to raise his constitutional question in the federal courts of that state. *Williams* v. *Maxwell,* 396 F.2d 143. If this court were to investigate the motives of the Connecticut officers or consider the statute's constitutionality, we would effectively nullify the constitutional and statutory provisions regulating interstate extradition. This of course we shall not do.

The petition for habeas corpus is denied and dismissed.

Motion for reargument denied.

*Aram K. Berberian,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald* P. *Ryan,* Assistant Attorney General, for respondent.