KENNETH HOWARD HINKLE AND WILLIAM GLENN HINKLE *v.* WINTHROP ROCKEFELLER, GOVERNOR ET AL

5519                                              458 S. W. 2d 371

Opinion delivered October 5, 1970
[Rehearing denied November 2, 1970.]

*W. Dent Gitchell,* for petitioners.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for respondents.

CONLEY BYRD, Justice. Petitioners William Glenn Hinkle and Kenneth Howard Hinkle were serving long prison sentences in a Texas penitentiary when they were extradited to Arkansas to stand trial for robbery. The extradition was carried out by an "executive agreement" between the governors of Arkansas and Texas. This agreement provides in essence that after petitioners' trial on the robbery charges in Arkansas, petitioners would be returned to the Texas authorities at the expense of the State of Arkansas. Upon trial in Pulaski Circuit Court, petitioners were convicted of the robbery charges and sentenced to serve 15 years in the Arkansas penitentiary. To prevent their return to Texas before serv-

ing their Arkansas sentences, petitioners filed a petition for writ of habeas corpus in the circuit court alleging the invalidity of the "executive agreement". For reversal of the trial court's denial of the writ they rely upon the following points:

"I. The provisions of the "executive agreements" which provide for the return of the petitioners prior to serving their Arkansas sentences are in violation of Arkansas law.

II. The procedures contained in Arkansas' extradition act, particularly the right to a judicial hearing, constitute the minimum standards of fair play and substantial justice necessary to satisfy the due process clause of the United States Constitution.

III. The "executive agreements" are interstate agreements made without the consent of Congress and are violative of Article 1, Section 10 of the Constitution of the United States.

IV. The "executive agreements" impose conditions upon rendition of persons wanted for crimes in other states which clearly violate the mandatory language of the Extradition Clause of the United States Constitution."

We find no merit in petitioners' contentions. Such executive agreements are not prohibited by the Extradition Act, Ark. Stat. Ann. §§ 43-3001—43-3028 (Repl. 1964), and are generally upheld among the several states and between the federal and state jurisdictions on the basis of comity. See *Rau* v. *McCorkle*, 131 A. 2d 895, 45 N. J. S. 191 (1957), aff'd. 135 A. 2d 224, 47 N. J. S. 36 (1957), and *Ponzi* v. *Fessenden*, 258 U. S. 254, 66 L. ed. 607, 42 S. Ct. 309, 22 A. L. R. 879 (1922). Furthermore such agreements are recognized as valid by the Congress of the United States. See 4 U. S. C. § 11 which provides:

"(a) The consent of Congress is hereby given to any two or more States to enter into agreements

or compacts for cooperative effort and mutual assist-ance in the prevention of crime and in the enforce-ment of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts."

Neither do we find any denial of due process under the circumstances here. All issues of the petitioners' identity and status as fugitives from Arkansas were determinable when the governor of Arkansas requested extradition from Texas. Petitioners' identity and status had already been judicially determined by Texas au-thorities before confining petitioners to the Texas peni-tentiary. Thus the only inconvenience to petitioners is that it makes them subject to trial in Arkansas while witnesses are available and evidence is fresh. The agree-ment actually works in favor of some prisoners as it permits them to obtain a speedy trial rather than serve a penitentiary sentence with a "hold" which may later prove to be invalid. Consequently we can find no de-nial of petitioners' rights of due process in permitting the state to also obtain a speedy trial.

Petition denied.