## DONALD JEROME WERTHEIMER v. STATE.

201 N. W. 2d 383.

August 18, 1972—No. 43313.

C. *Paul Jones,* State Public Defender, and *Earl P. Gray* and *Rosalie E. Wahl,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Robert F. Carolan,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Otis, Todd, and MacLaughlin, JJ.

TODD, JUSTICE.

Appeal from an order of the district court denying postconviction relief.

On January 12, 1970, defendant pleaded guilty to a charge of aggravated robbery in violation of Minn. St. 609.245 and was subsequently sentenced to 15 years in State Prison at Stillwater. On April 10, 1970, the State of Oregon, pursuant to the Interstate Agreement on Detainers, Minn. St. 629.294 and Ore. Rev. Stat. § 134.605, requested temporary custody in order that defendant might be tried on a charge of robbery. When defendant learned of Oregon's request, he made a request to the prison authorities for proceedings under the Uniform Criminal Extra-

dition Act[1] rather than under the Interstate Agreement. Defendant's request was not granted, and on April 27, 1970, pursuant to procedures outlined in the Interstate Agreement, he petitioned Governor Harold LeVander, asking that Oregon's request for custody be denied or that he be afforded extradition proceedings on the grounds that he was not in Oregon at the time of the alleged offense. Although defendant contends that witnesses could verify his contention, he at no time presented any affidavits or testimony to that effect. Governor LeVander approved Oregon's request on May 15, 1970, and on May 20 Oregon took custody. Following his conviction by an Oregon jury, he was sentenced to 18 years in prison and was then returned to Minnesota.

On February 26, 1971, defendant petitioned for postconviction relief on the ground that the alleged illegality of the procedure used by Minnesota in releasing him to the custody of the Oregon authorities operated as an implied pardon or commutation of sentence.

■ The American Bar Association, in its Standards of Criminal Justice, Standards Relating to Speedy Trial (Approved Draft, 1968) § 3.1, has urged the states to assure prisoners a speedy trial on charges which remain untried. The standard is premised on the assumption that a prisoner who has had a detainer lodged against him for trial upon completion of his sentence is seriously disadvantaged thereby. The Council of State Governments has also pointed out the detrimental effects of an untried detainer:

"The prison administrator is thwarted in his efforts toward rehabilitation. The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for

---

[1] Minn. St. 629.01 to 629.29.

parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated." Council of State Governments, The Handbook on Interstate Crime Control (Rev. ed. 1949) 86.

Minnesota, as well as 39 other states, the District of Columbia, and the United States Government, has decided to meet this objective by joining in the Interstate Agreement on Detainers. Minn. St. 629.294, subd. 1, art. IV, provides in part:

"(a)   The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request; and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

\*     \*     \*     \*     \*

"(d)   Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the grounds that the executive authority of the sending state has not affirmatively consented to or ordered such delivery."

Defendant was allowed to petition the governor and ask that

Oregon's request be denied. Since this is the only method of attacking the removal that is specifically mentioned by the statute, we must reject defendant's contention that he was not granted the full protection of the statute.

■ Under § 629.10, a person subject to extradition must be taken before a magistrate, who must inform him of the demand made for his surrender, the crime with which he is charged, and that he has the right to legal counsel. The legality of the extradition may then be tested by a writ of habeas corpus.

Defendant contends that the state has refused to appoint counsel and grant him a hearing solely because of his status as a prisoner, and by doing so, has violated his rights under the due process and equal protection clauses of the Fourteenth Amendment.

At the outset, it must be noted that the equal protection clause of the Fourteenth Amendment does not prohibit all classifications, but only those which are arbitrary and unreasonable. Minnesota, in formulating its extradition laws, has developed different procedures for prisoners and for its ordinary citizens.

We cannot agree that such a classification is per se arbitrary and unreasonable. A prisoner is in a situation completely different from that of the ordinary citizen whose freedom is unrestricted. By being called upon to defend against a charge in another jurisdiction, a prisoner suffers no additional restriction on his freedom; he continues to gain credit for time served while in the temporary custody of the foreign jurisdiction. The average citizen, however, faces a far different situation. His freedom of movement, previously unrestrained, is brought to an end. He is removed from his community, family, friends, and job under conditions which may permanently cloud his reputation, and, as such, his need for protection from extradition on spurious charges is far greater than that of the prisoner.

We also cannot agree that defendant's rights under the due process clause of the Fourteenth Amendment were violated. In proceedings under the extradition act, the primary purpose of

the hearing is to inform the accused of the request for extradition and the charges that have been brought against him. The filing of a detainer under the Interstate Agreement serves the same function.

In extradition proceedings, the accused has the right to representation by counsel; if he is indigent, he is entitled to be represented by the public defender. Minn. St. 611.14(a).[2] This right to representation in extradition proceedings is solely statutory; it is not constitutionally required. Applications of Oppenheimer, 95 Ariz. 292, 389 P. 2d 696, certiorari denied, 377 U. S. 948, 84 S. Ct. 1359, 12 L. ed. 2d 311 (1964); Rutledge v. Ingham County Sheriff, 21 Mich. App. 726, 176 N. W. 2d 417 (1970); Roberts v. Hocker, 85 Nev. 390, 456 P. 2d 425 (1969); United States ex rel. Calhoun v. Twomey, 454 F. 2d 326 (7 Cir. 1971). Under the Sixth Amendment, the right to court-appointed counsel extends only to cases where a person may be subjected to a loss of liberty. State v. Borst, 278 Minn. 388, 154 N. W. 2d 888 (1967); Argersinger v. Hamlin, 407 U. S. 25, 92 S. Ct. 2006, 32 L. ed. 2d 530 (1972); cf. Comment, 45 Notre Dame Lawyer 351. Although several states have chosen to give prisoners the right to counsel in proceedings under the Interstate Agreement, our legislature has not adopted such a provision. See, e. g., Oregon Rev. Stat. § 134.665; N. Y. Criminal Procedure Law, § 580.20, Art. IX(7) (McKinney 1971).

The final protection afforded by the extradition act is that the accused must be granted a reasonable time within which to challenge the extradition request by means of a writ of habeas corpus. Article IV(a) of the Interstate Agreement provides that 30 days must elapse following the request for custody before the prisoner may be released to the requesting state. This provision

---

[2] Minn. St. 611.14 reads in part: "The persons hereinafter described who are financially unable to obtain counsel, shall be entitled to be represented by a public defender:

"(a)   a person charged with a felony or gross misdemeanor, including such a person when charged pursuant to sections 629.01 to 629.29."

should provide the prisoner with ample time in which to take any legal steps which he may deem necessary.[3] We are not convinced, on the record before us in this case, that defendant had insufficient time in which to make any legal objections. While it would have been better practice to have granted defendant's request for further delay, thus giving him more time in which to apply for a writ of habeas corpus, we do not believe that this was constitutionally required.

In comparing proceedings under the Uniform Criminal Extradition Act with those under the Interstate Agreement, differences are immediately apparent. The differences are not of such magnitude or so fundamentally unfair as to deprive defendant of equal protection and due process of law. Since we do not accept defendant's contention that he was improperly released to the Oregon authorities, we do not reach the question of whether an improper release would have operated to commute the Minnesota sentence.

■ Defendant also contends that he should be granted a default judgment because of the state's failure to file a timely answer to his petition for postconviction relief as required by § 590.03. We have already rejected this contention in Dhaemers v. State, 286 Minn. 250, 255, 175 N. W. 2d 457, 461 (1970), where we said:

"Under the plain wording of § 590.03, the 20-day limit is not absolute and the state may be granted an extension of the time for filing a responsive pleading. Since § 590.03 allows the postconviction court in its own discretion to 'fix'· the time period within which the state must file a responsive pleading, that court clearly did not abuse its discretion in denying the petition because the state had not filed an answer earlier. Furthermore,

---

[3] The appropriate authorities on receiving the request for custody should notify the prisoner that he has 30 days in which to take any legal steps which he may deem necessary and that he may contact the Minnesota State Public Defender.

petitioner failed to show prejudice from the delay on the part of the state in filing its responsive pleading."

Affirmed.