[No. 1007-3.   Division Three.   March 10, 1975.]

JAMES C. HYSTAD, *Appellant,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, et al., Respondents.*

Richard L. Phillips, for appellant.

Slade Gorton, Attorney General, and Lee D. Rickabaugh, Assistant, for respondents.

McINTURFF, C.J.—The primary issue is whether the failure of RCW 9.100.070[1] to provide judicial, as opposed to administrative notice of a prisoner's rights, constitutes a denial of due process and equal protection of the law.

On July 17, 1972, plaintiff's probation in the state of Washington was revoked due to an indictment filed against him on May 3, 1972, in the state of Oregon, charging him with burglary in the first degree and unlawful possession of weapons. On October 30, 1972, plaintiff, while at the Washington State Penitentiary, was notified that an untried indictment had been filed in the state of Oregon. Officials at the penitentiary at Walla Walla were requested, on July 23, 1973, to place the plaintiff in the temporary custody of Oregon officials for the purpose of prosecuting him under the untried indictment. The detainer[2] was lodged against

---

[1]RCW 9.100.070 provides:

"In order to implement Article IV (a) of the agreement on detainers, and in furtherance of its purposes, the appropriate authorities having custody of the prisoner shall, promptly upon receipt of the officer's written request, notify the prisoner and the governor in writing that a request [by a foreign state] for temporary custody has been made and such notification shall describe the source and contents of said request. *The authorities having custody of the prisoner shall also advise him in writing of his rights to counsel, to make representations to the governor within thirty days, and to contest the legality of his delivery.*" (Italics ours.)

[2]A detainer is a warrant filed against a person already in custody for the purpose of insuring that the prisoner will be available to the

the plaintiff under Washington's Agreement on Detainers (hereinafter Detainer Act) article 4 (a),[3] RCW 9.100.010.

Plaintiff seeks a writ of prohibition to prevent defendants from delivering him into the custody of the Oregon officials without first providing him "judicial" notice of his rights as provided for in Washington's Uniform Criminal Extradition Act (hereafter Extradition Act), RCW 10.88.290.[4]

---

authority having lodged the detainer at the completion of the individual's term of incarceration. Counsel of State Governments, *Suggested State Legislation* 167 (1958); American Bar Association, *Standards Relating to Speedy Trials* 43 (Approved Draft 1968) (hereinafter cited ABA Standards).

In R. Singer & W. Statsky, *Rights of the Imprisoned* 825 (1974), the authors note that there are three kinds of detainers:

> (1) [T]hose which reflect an unresolved criminal charge against the prisoner; (2) those which reflect that, prior to his incarceration, the prisoner had been sentenced for another crime, which has yet to be served; (3) probation or parole "warrants," seeking to resolve the question of whether such conditional liberty as the prisoner had prior to this present criminal charge should be revoked.

For a discussion of the effect detainers have on inmate morale, *see Lawrence v. Blackwell*, 298 F. Supp. 708, 713-14 (N.D. Ga. 1969); Wexler & Hershey, *Criminal Detainers in a Nutshell*, 7 Crim. L. Bull. 753, 754 (1971); Note, *Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions*, 77 Yale, L.J. 767, 771 (1968); *see also* Comment, *The Detainer System and the Right to a Speedy Trial*, 31 U. Chi. L. Rev. 535, 551-55 (1964).

[3]Article 4 (a) provides in relevant part:

"The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated . . . ."

[4]RCW 10.88.290 provides in relevant part:

"No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless *he shall first be taken forthwith before a judge of a court of record* in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus." (Italics ours.)

Plaintiff was given notice administratively as provided by the Detainer Act's implementing statute, RCW 9.100.070,[5] for incarcerated persons. The trial court held this to be adequate. We agree.

Plaintiff alleges that RCW 9.100.070 results in a denial of due process and equal protection because: (1) judicial notice is not provided, and (2) a prisoner is not adequately informed of the provisions available to him.

In determining whether RCW 9.100.070 is violative of due process and equal protection guaranties we must keep in mind that the broad purpose of the Detainer Act is to expedite the disposition of outstanding charges against a prisoner incarcerated in other jurisdictions in a manner which insures fundamental rights under the Sixth Amendment.[6]

## DUE PROCESS

The provisions in the Detainer Act necessary for a speedy trial are many.[7] It provides two basic methods by which untried detainers may be disposed of. First, article 3 (a)[8] allows the prisoner to initiate the request for the final

---

[5]See note 1.

[6]*Klopfer v. North Carolina*, 386 U.S. 213, 222-23, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1967) (Sixth Amendment right to a speedy trial is applicable to the states by virtue of the Fourteenth Amendment); *Smith v. Hooey*, 393 U.S. 374, 383, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969) (states have a constitutional duty to make a "diligent, good-faith effort" to bring prisoners in the custody of another sovereign to trial).

[7]Basic to the Sixth Amendment's guaranty of a speedy trial is a prisoner's right of reasonable access to the courts. *Johnson v. Avery*, 393 U.S. 483, 485, 21 L. Ed. 2d 718, 89 S. Ct. 747 (1969); *McCarty v. Woodson*, 465 F.2d 822, 825 (10th Cir. 1972); *Mead v. Parker,* 464 F.2d 1108, 1110 (9th Cir. 1972); *see Cochran v. Kansas*, 316 U.S. 255, 86 L. Ed. 1453, 62 S. Ct. 1068 (1942); *Ex parte Hull*, 312 U.S. 546, 85 L. Ed. 1034, 61 S. Ct. 640 (1941).

[8]Agreement on Detainers (RCW 9.100.010), article 3 (a) provides:
"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the*

disposition of any untried indictments, informations or complaints which are the basis for any detainer holding him. Once the request for final disposition has been received by the prosecuting officer in the appropriate jurisdiction the prisoner must be brought to trial within 180 days. Article 3 (c)[9] requires the official having custody of the prisoner to "promptly" inform him of the source and contents of any untried detainers and of his right to request a final disposition.

Secondly, article 4 (a)[10] allows the prosecuting authority in another jurisdiction to request final disposition of any

appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: *Provided*, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." (Italics ours.)

[9]Article 3 (c) provides:

"The warden, commissioner of correction or other official having custody of the prisoner *shall promptly inform him* of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." (Italics ours.)

[10]Article 4 (a) provides:

"The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: *Provided*, That the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: *Provided further*, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

untried indictments, etc. Article 4 (d)[11] preserves the right of a prisoner to contest the legality of his delivery during the 30-day period (provided for in article 4 (a)) which must pass before the request for temporary custody may be granted.

Article 4 (c) requires the trial to commence within 120 days of the time the prisoner arrives in the receiving state. Unless there is good cause shown for granting any necessary continuance, article 5 (c) requires that the indictment, etc., be dismissed with prejudice if a trial is not commenced within the appropriate time periods under article 3 or article 4.

Other jurisdictions have considered similar questions regarding the constitutional validity of legislation adopting the Detainer Act. The Wisconsin Supreme Court, in *State ex rel. Garner v. Gray*, 55 Wis. 2d 574, 201 N.W.2d 163, 166 (1972), reviewed their version of the Detainer Act and found a denial of due process because there was no requirement that the warden inform a prisoner against whom a detainer has been lodged of his right either to petition the Governor to deny the request, or to seek legal relief in the courts. The *Garner* court also found a denial of equal protection on grounds similar to those urged by the plaintiff here. See equal protection section, *infra*. An opposite conclusion was reached in *Wertheimer v. State*, 294 Minn. 293, 201 N.W.2d 383 (1972), which was faced with arguments similar to those advanced in *Garner*. The *Wertheimer* court found no violation of due process. As the prisoner's rights were not determined at the hearing provided for under their Extradition Act, the court concluded that the difference in methods of providing notice to prisoners under that act, as opposed to their Detainer Act,

---

[11]Article 4 (d):

"Nothing contained in this Article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery."

served the same purpose. The court further reasoned that the procedures under the two acts were not offensive to the concept of equal protection since it was neither unreasonable nor arbitrary for their legislature to have found different procedures for prisoners as opposed to ordinary citizens.[12]

■■ The type of process due plaintiff is that which procedurally satisfies the Fourteenth Amendment. In *Hannah v. Larche*, 363 U.S. 420, 442, 4 L. Ed. 2d 1307, 80 S. Ct. 1502 (1960), the court said:

> "Due process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings.[13]

The fairness exacted by due process in a setting in which neither a court nor government agency determines legal rights, or even acts as a fact-finding body, does not require the judicial notice urged by plaintiff. Although administra-

---

[12]A prisoner generally retains all the rights of an ordinary citizen except those expressly or by necessary implication taken from him by law. *Coffin v. Reichard*, 143 F.2d 443, 445, 155 A.L.R. 143 (6th Cir. 1944), *cert. denied*, 325 U.S. 887, 89 L. Ed. 2001, 65 S. Ct. 1568 (1945); *Carothers v. Follette*, 314 F. Supp. 1014, 1023 (S.D.N.Y. 1970).

[13]This concept was applied in determining a prisoner's rights in *Sostre v. McGinnis*, 442 F.2d 178, 196 (2d Cir. 1971); *accord, Menechino v. Oswald*, 430 F.2d 403 (2d Cir. 1970) (formal trial-type due process is not a requirement in connection with a parole release determination). The *Sostre* court stated at page 196:

> Beyond the process of guilt determination and initial incarceration, courts have displayed greater reluctance to import all the trappings of formal due process.

tive efficiency cannot outbalance constitutional rights, *see Stanley v. Illinois*, 405 U.S. 645, 656, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), the notice provided plaintiff by RCW 9.100.070 is neither violative of due process, nor does it hinder the right of a speedy trial guarantied under the Sixth Amendment. Rather, it promotes a speedy trial through its provision for dismissal of the action if the trial does not commence within 120 days after the prisoner has arrived in the jurisdiction where the charge has been placed against him.

Plaintiff argues that the notice is inadequate under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), because he was not informed he was entitled to appointment of counsel if he were indigent, and he was not specifically notified that he could file a "writ of habeas corpus" to contest the legality of his delivery to the state of Oregon.[14]

Due process requires only that an "accused must be adequately and effectively apprised of his rights and the

---

[14]A writ of habeas corpus is a procedural device fashioned particularly for the purpose of subjecting to judicial scrutiny executive and private, as well as judicial, restraints on liberty. *Peyton v. Rowe*, 391 U.S. 54, 58, 20 L. Ed. 2d 426, 88 S. Ct. 1549 (1968). In *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495, 35 L. Ed. 2d 443, 93 S. Ct. 1123 (1973), the court quoted the following statement:

> "The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent."

Traditionally, a writ of habeas corpus has been treated as a civil action for the enforcement of the right to personal freedom, *Fay v. Noia*, 372 U.S. 391, 423-24, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963), although there is some disagreement as to the exact nature of a habeas corpus proceeding. In *Harris v. Nelson*, 394 U.S. 286, 293-94, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969), the court stated:

> It is, of course, true that habeas corpus proceedings are characterized as "civil." [Citation omitted.] But the label is gross and inexact. Essentially, the proceeding is unique.

(Footnote omitted.)

exercise of those rights must be fully honored." *Miranda v. Arizona*, 384 U.S. 436, 467, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The right to representation in extradition proceedings, similar in nature to proceedings under the Detainer Act, is solely statutory; it is not constitutionally required.[15]

Our legislature has not specifically adopted a provision for counsel to indigent prisoners sought under the Detainer Act. Under the Sixth Amendment the right to court-appointed counsel extends only to cases where persons may be subjected to a loss of liberty. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). Clearly, the petitioner can suffer no loss of liberty as he is already incarcerated. Finding no authority to the contrary, we hold there is no constitutional mandate that a prisoner be specifically informed *by the court* of his right to contest the legality of his delivery by a "writ of habeas corpus."

## Equal Protection

██ Plaintiff contends that the arbitrary decision of Oregon state officials to extradite him under the Detainer Act as opposed to the Extradition Act results in according incarcerated prisoners different procedural rights.

The Detainer Act is designed to facilitate the transfer of a prisoner into the temporary custody of officials from another state for the purpose of trying him there on detainers based on untried indictments, etc., and to return him to the sending state subsequent to trial. Those not incarcerated are normally sought under the Extradition Act because it is not intended that they be returned to the original jurisdiction from which they were sought. Although it is possible for a prisoner to be extradited under the Extradition Act instead of the Detainer Act, it is apparent that the legislature has specifically designed different procedures for pris-

---

[15]*Hackin v. State,* 102 Ariz. 218, 427 P.2d 910 (1967), *appeal dismissed,* 389 U.S. 143, 19 L. Ed. 2d 347, 88 S. Ct. 325 (1967), *rehearing denied,* 389 U.S. 1060, 19 L. Ed. 2d 866, 88 S. Ct. 766 (1968); *In re Oppenheimer,* 95 Ariz. 292, 389 P.2d 696 (1964), *cert. denied,* 377 U.S. 948, 12 L. Ed. 2d 311, 84 S. Ct. 1359 (1964).

oners as opposed to other persons. At best, the arbitrary decision of a state official to extradite a prisoner under the Extradition Act as opposed to the Detainer Act might result in a technical violation of equal protection based on arbitrariness. Legislative classifications need not be made with mathematical nicety, *see, e.g., Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78-79, 55 L. Ed. 369, 31 S. Ct. 337 (1911), nor do they offend the equal protection clause because of some inequalities that may arise as the result of their practical application. *See, e.g., McGowan v. Maryland,* 366 U.S. 420, 426-27, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961). In *Baxstrom v. Herold,* 383 U.S. 107, 111, 15 L. Ed. 2d 620, 624, 86 S. Ct. 760, 763 (1966), the court stated:

> Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.

We find that the procedural distinction between the two statutes does have some relevance to their purpose and is not offensive to the equal protection clause.

Plaintiff contends that the equal protection clause is violated because there is no reasonable relationship between the purpose of the Detainer Act and the legislative omission to require a prisoner to be judicially informed of his rights. Defendant contends that the distinction exists because the purpose of the two acts, although to insure a speedy trial, is separate and distinct. Even though differences between the two acts are immediately apparent, they are not substantial. Prior to the time a warrant for extradition is approved by the Governor under the Detainer Act, a prisoner is notified of his right to counsel, his right to contest the legality of his delivery, and his right to ask the Governor to deny the request for temporary custody before it is granted. Article 4 (a) additionally provides a prisoner 30 days within which he may challenge the request for his extradition. The Extradition Act requires that a prisoner be judicially informed of his rights "after" the Governor has issued a warrant; and an accused must be

granted a reasonable time within which to challenge the extradition by means of a writ of habeas corpus.

Although the proceedings under the Extradition Act and the Detainer Act are different, the differences are not so fundamentally unfair as to deprive plaintiff of equal protection and due process of law. The fact that a prisoner may be sought under the Extradition Act as opposed to the Detainer Act, does not violate plaintiff's right to equal protection of the laws. All prisoners are given notice, the sine qua non of due process, and reasonable access to the courts.

Judgment of the trial court is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied April 10, 1975.

Review denied by Supreme Court May 20, 1975.