STATE of Minnesota, Respondent,

v.

Clark Albert BAILEY, Appellant.

No. 48137.

Supreme Court of Minnesota.

Dec. 30, 1977.

C. Paul Jones, Public Defender, Robert E. Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Craig Forsman, Sp. Asst. Atty. Gen., Aviva Breen, Asst. Atty. Gen., St. Paul, W. M. Gustafson, County Atty., St. Peter, for respondent.

Heard before PETERSON, YETKA, and IVERSON, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an extradition proceeding in which the governor of this state issued a rendition warrant for petitioner's surrender to Iowa authorities for trial on a murder charge growing out of a series of incidents in which a Minneapolis girl was killed. Petitioner appeals from an order of the Nicollet County District Court quashing a writ of habeas corpus. We affirm.

On May 18, 1977, petitioner was sentenced to 0 to 20 years for criminal sexual conduct in the first degree,[1] and 0 to 40 years for kidnapping,[2] both pursuant to pleas of guilty. He had pled guilty earlier and several other counts were dismissed. On May 6, 1977, an information was filed in Worth County, Iowa, District Court charging petitioner with murder in violation of Iowa Code, §§ 690.1 and 690.2. The murder charge arose from the series of incidents on December 18, 1976, in which LoAnn Erickson, a Minneapolis girl, was sexually assaulted, kidnapped, and ultimately murdered. Ms. Erickson's body had been discovered on December 23, 1976, in Fertile, Iowa.

1. Minn.St. 609.342.

2. Minn.St. 609.25, subd. 2(2).

On July 6, 1977, the governor of Iowa demanded petitioner's extradition on the murder charge. On July 11, 1977, pursuant to a district court stay of execution of sentence, the Hennepin County Probate Court found that petitioner was a psychopathic personality[3] and ordered him committed to the Minnesota Security Hospital, St. Peter, Minnesota. The court specifically found that petitioner was not mentally ill within the meaning of Minn.St. c. 253A.

On July 13, 1977, a rendition warrant was issued for petitioner's extradition to Iowa. On July 25, 1977, an extradition hearing was held in which petitioner was informed of the warrant and in which the public defender was appointed to represent him. The hearing was continued until August 1, 1977, at which time the extradition was opposed. A petition for a writ of habeas corpus was filed August 8, 1977. A hearing was ordered to be held on September 13, 1977. At the request of the state and over the objection of the petitioner it was held on August 25, 1977. The writ was quashed, but execution of the rendition warrant was stayed until August 30, 1977. The notice of appeal was filed August 25, 1977.

The petitioner has raised four issues:

1. Where the Interstate Agreement on Detainers is in effect, may a prisoner incarcerated in Minnesota be extradited to Iowa under the Uniform Criminal Extradition Act?

2. May a person adjudicated a "psychopathic personality" under Minn.St. 526.09

be subject to the remedies of the Interstate Agreement on Detainers Act?

3. Did the lower court err in refusing to grant a continuance to allow petitioner to be represented by another attorney?

4. Do statutory or constitutional double jeopardy prohibitions require Minnesota to refuse petitioner's extradition?

■ Petitioner's initial challenge to the extradition itself is solely that the wrong procedure is being used. In *State ex rel. Gegenfurtner v. Granquist*, 271 Minn. 207, 209, 135 N.W.2d 447, 448 (1965), we set out four grounds on which extradition could be challenged: (a) That the demand for extradition and warrant issued in response to it are not in proper form; (b) that the criminal charge pending in the demanding state is inadequate to support extradition; (c) that he is not the same person as the person named in the demand; and (d) that he was not present in the demanding state at the time of the offense charged. The habeas corpus court found none of these deficiencies present and petitioner expressly states he is not challenging his custody for any of these reasons, but that he is challenging the procedure being used to remove him from that custody.

(1) Propriety of extradition.

■ Petitioner's argument appears to be the following: the governor has discretion in deciding whether to extradite a prisoner;[4] both Minnesota and Iowa are members

---

3. Minn.St. 526.09.

4. Minn.St. 629.05 provides: "When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated.

"The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state who is

charged in the manner provided in section 629.-23 with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily." This is § 5 of the Uniform Criminal Extradition Act and the same as Iowa Code, § 759.5.

Minn.St. 629.19 provides: "If a criminal prosecution has been instituted against such person under the laws of this state and is still pending, the governor, in his discretion, either may surrender him on demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state." This is § 19 of the Uniform Act; Iowa Code, § 759.19 is the same.

of the Interstate Agreement on Detainers,[5] which provides for prompt disposition of outstanding charges against incarcerated prisoners; therefore extradition may not be used to have an incarcerated prisoner delivered from one state to another to face a charge in the demanding state. This reasoning not only fails logically, but is against the weight of case law which holds that an extradition proceeding is a proper method for bringing a prisoner incarcerated in one state to trial in another.[6]

■ Petitioner cites only one case to support his contention, *Wertheimer v. State,* 294 Minn. 293, 201 N.W.2d 383 (1972), but *Wertheimer* does not support petitioner's argument. That case involved a challenge to the Interstate Agreement on Detainers on the ground that proceedings thereunder denied prisoners equal protection of the law under the Fourteenth Amendment. This court held that use of detainer proceedings against prisoners did not deprive them of equal protection, *despite the fact that the prisoner's rights to challenge the detainer proceedings were more limited than they would have been in extradition proceedings.*[7] Thus petitioner is in the anomalous position of claiming that he is entitled to be subject to a proceeding for delivery to Iowa which would provide him with fewer or less complete procedural safeguards than he was, in fact, afforded.

The reason for this contention is apparent when petitioner's second claim is examined.

If petitioner is "mentally ill," then the state of Iowa could not have him returned by a proceeding under the Interstate Agreement on Detainers.[8]

(2) Psychopathic Personality as included in the mental illness provision of the Interstate Agreement on Detainers.

■ Because extradition is clearly proper in the present case, this issue need not be decided.

(3) Refusal to grant a continuance.

■ Normally a court has wide discretion in deciding whether to grant a continuance. *State v. Vance,* Minn., 254 N.W.2d 353 (1977). In determining whether this discretion was abused, the reviewing court must look to whether there was material prejudice to the defendant (petitioner) in the preparation or presentation of his case. *State v. Huber,* 275 Minn. 475, 148 N.W.2d 137 (1967).

■ Minn.St. 611.14 gives an indigent the right to representation by a public defender in extradition proceedings. *State v. Vance, supra,* held that where a competent and able public defender had been appointed and had thoroughly investigated the facts of the case, a defendant was not entitled to a continuance to obtain private counsel when he had not done so for 11 weeks. This court further noted that the defendant had no compelling reason to be dissatisfied with the public defender.

---

5. Minn.St. 629.294; Iowa Code, § 759A.1.

6. See, e. g., *People ex rel. O'Connor v. Bensinger,* 48 Ill.2d 440, 270 N.E.2d 1 (1971) (extradition of prisoner appropriate for trial but not service of sentence). *Commonwealth v. Seip,* 385 Pa. 545, 124 A.2d 110 (1956); *Buffalo v. Tanksley,* 536 P.2d 827 (Colo.1975); *Hinkle v. Rockefeller,* 249 Ark. 110, 458 S.W.2d 371 (1970). The Commissioner's prefatory note to the Uniform Criminal Extradition Act states (11 U.L.A. 51, 54): "The first paragraph [of § 5] is intended to cover the situation of a man who is wanted for trial in one state and who is already serving a prison sentence in another state."

7. Extradition gives the prisoner a right to a hearing before a magistrate with representation by appointed counsel if he is indigent.

There is no right to counsel provided in the detainer statute. The Wertheimer court noted, however, that the detainer proceeding contained certain functional equivalents of the extradition hearings. Accord: *Hystad v. Rhay,* 12 Wash.App. 872, 533 P.2d 409 (1975). At least one court has held that the same protections given prisoners under the extradition act must be given prisoners under the Interstate Agreement on Detainers. *Moen v. Wilson,* 536 P.2d 1129 (Colo.1975).

8. Minn.St. 629.294, Article VI(b). Petitioner does not raise the issue of whether this difference itself denies equal protection of the law. He further makes no claim that he was incompetent to assist in the presentation of his own defense.

In the present case petitioner knew of the proceedings by July 25 and thus had at least 1 month to obtain private counsel.[9] When asked why he preferred Nardi, petitioner stated only that Nardi was older and more experienced.

Since Nardi had represented petitioner earlier and had been discharged, and since a public defender had been appointed thereafter to represent him and both petitioner and his counsel were aware almost a month in advance that a hearing would be held in September, we hold petitioner was not prejudiced by moving up the hearing date in any way.[10] To the contrary, postponement would have served only to further delay a decision on this matter.

(4) Double jeopardy.

Petitioner argues, for the first time on appeal, that his extradition to Iowa would subject him to double jeopardy. Although we can refuse to consider this issue because it was not raised below, *State v. Schumann,* 280 Minn. 48, 157 N.W.2d 758 (1968), we need not, in any case, decide it on the merits.

■ This court has held that the proper forum for litigating constitutional issues relating to the guilt or innocence of the accused is the demanding state and not the asylum state. In *In re Petition of Garritson,* 304 Minn. 133, 229 N.W.2d 36 (1975), the court refused to decide an issue of the suggestiveness of eyewitness identification, stating that to do so would unduly burden the habeas corpus proceeding.[11] Other courts have held that challenges to the prosecution itself are not properly raised in the asylum state.[12]

■ At least three courts have directly held that a double jeopardy defense may not be litigated in a habeas corpus extradition proceeding in the asylum state. The court in *Ex Parte Gideon,* 493 S.W.2d 156 (Tex.Crim.App.1973), held that claims of double jeopardy under the laws of the demanding state were not properly raised in the asylum state. Accord, *Roscoe v. Warden,* 23 Md.App. 516, 328 A.2d 64 (1974); *Price v. Pritchess,* 556 F.2d 926 (9 Cir. 1977). Petitioner's argument appears to be slightly different from those raised in the above cases. He argues that Minnesota cannot extradite him because *Minnesota* law prohibits a second trial for events arising out of the same course of conduct involving his prior crimes.[13] Because Minnesota is not trying the petitioner for murder, Minn.St. 609.035 does not apply and petitioner's claim fails. Insofar as the claim is based upon Iowa law or the Federal constitution, it is controlled by the decisions cited above. The petitioner may raise these double jeopardy claims in Iowa.

The order quashing the writ of habeas corpus is affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.

9. Petitioner stated that his wife had contacted a Mr. Nardi the day before and that Nardi could be ready in 1 to 2 weeks. Nardi had apparently represented petitioner earlier but had been discharged.

10. Petitioner does not claim that his public defender was unprepared or incompetent, or that the continuance would have allowed the development of additional defenses.

11. See, also, *State ex rel. Kollman v. Johnson,* 184 Minn. 309, 238 N.W. 490 (1931); *State ex rel. Georgian v. Jensen,* 154 Minn. 540, 191 N.W. 908 (1923); cf. *State ex rel. DeGidio v. Talbot,* Minn., 250 N.W.2d 169 (1977).

12. See, e. g., *Sweeney v. Woodall,* 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952) (cruel and unusual punishment); *Brown v. Sharkey,* 106 R.I. 714, 842, 263 A.2d 104 (1970) (good faith of demanding state); *United States ex rel. Tyler v. Henderson,* 453 F.2d 790 (5 Cir. 1970) (res judicata); *Collins v. Stynchcombe,* 226 Ga. 776, 177 S.E.2d 682 (1970) (constitutionality of sentence).

13. Petitioner's citation of *State v. Krech,* Minn., 252 N.W.2d 269 (1977), is not on point. *Krech* involved charges in different courts in Minnesota; the present case involves two independent jurisdictions.