390 A.2d 1341

COMMONWEALTH of Pennsylvania ex rel. Frank J. LANG, Appellant,

v.

John D. CASE, Warden, Bucks County Prison, Doylestown, Pennsylvania.

Superior Court of Pennsylvania.

Argued Sept. 12, 1977.

Decided July 12, 1978.

John J. Kerrigan, Jr., Newtown, for appellant.

Peter F. Schenck, Assistant District Attorney, with him Kenneth G. Biehn, District Attorney, Doylestown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On January 22, 1976, appellant was arrested by Buckingham Township Police in Bucks County, Pennsylvania, and charged with being a fugitive from New Jersey. Appellant was released on his own recognizance pending receipt of Governors' Warrants. On May 5 the Governors' Warrants were received, and appellant surrendered himself to Detective Hayman of the Bucks County District Attorney's Office. On the same day appellant's attorney filed a petition for writ of habeas corpus. On September 24 a hearing on appellant's petition was held before Judge BECKERT. At the conclusion of the hearing Judge BECKERT ordered the matter listed for argument before a three judge panel. On February 8, 1977, the panel heard argument, and on March 31 filed an opinion and order denying appellant's petition and ordering him extradited. On April 5 appellant filed an application for supersedeas and bail pending appeal to this court, which was granted.

It has been consistently held that:

[i]n every extradition proceeding, the relator has an absolute right to require that his identity as the person named

in the Extradition Requisition be established and proved by the weight of credible evidence. *Commonwealth ex rel. Edgar v. Davis*, 425 Pa. 133, 136, 228 A.2d 742, 744 (1967).

Since the evidence presented by the Commonwealth here was insufficient to show that appellant was the person named in the requisition papers,[1] the order of the lower court is reversed.

–1–

The demand for appellant's extradition was accompanied by a copy of an indictment alleging that one Frank J. Lang along with other named and unnamed persons conspired together to commit the crimes of possession, possession with intent to distribute, and distribution of controlled dangerous substances, all in violation of New Jersey criminal statutes. The indictment further alleged that on February 15, 1975, in furtherance of the aforesaid conspiracy, one Joseph A. Ludwig had twice "used telephone facility 609–882–7377 located at 2452 Stuyvesant Avenue, Ewing Township, New Jersey to engage in conversation with [one] Frank J. Lang regarding the illegal possession, purchase and sale of controlled dangerous substances."

In order to prove that appellant was the Frank J. Lang who had participated in the two telephone conversations alleged in the indictment, the Commonwealth at the habeas corpus hearing introduced the testimony of Richard Hutchinson, and investigator for the Mercer County Prosecutor's Office in New Jersey, who monitored the conversations. With respect to the first conversation: Hutchinson monitored an incoming telephone call at approximately 5:10 p.m.

1. Appellant also argues: that the Commonwealth has not shown that a crime was committed in New Jersey; that the requisition papers are not sufficient to support an extradition under Section 6 of the Uniform Criminal Extradition Act, Act of July 8, 1941, P.L. 288, 19 P.S. § 191.6, *Commonwealth ex rel. Aronson v. Price*, 412 Pa. 493, 495–96, 194 A.2d 881, 882 (1963); and that the New Jersey prosecution is barred under the double jeopardy clause of the Fifth Amendment. Since we do not reach these other claims, we express no opinion regarding them.

in which Ludwig identified the caller as "Frank". N.T. 5–6 [2]. At the end of the conversation the caller indicated that he would "have to call . . . back." N.T. 13. With respect to the second conversation: At 5:22 p.m. there

2. Hutchinson's testimony was as follows:

Q. [By District Attorney] Could you tell us, please whether or not that phone facility was identified as belonging to a particular subscriber?

A. Yes. That phone facility was issued to a K. L. Robinson, of 2452 Stuyvesant Avenue, Ewing Township, New Jersey. This was a residence that was rented by a Joseph Ludwig, 2452 Stuyvesant Avenue, Ewing Township, New Jersey, and Mr. Ludwig was using that facility.

Q. And this was determined by investigation by yourself and other members of the Prosecutor's Office?

A. Yes, sir, that's correct.

Q. Now, Investigator Hutchinson, could you tell us, please, what if anything you did on February 14, 1975 with respect to the particular phone number?

A. Well, at that time, this phone number was being monitored; I was part of the monitoring team. This particular phone call was monitored by Investigator John Burn of our unit.

Q. Now, at what point did you, yourself personally, monitor phone calls over that particular facility?

A. February 15, 1975.

Q. And can you tell us, please, what happened at approximately 5:10 p.m. on February 15, 1975?

A. On February 15, 1975 at approximately 5:10 p.m., I monitored an in-coming call over facility 609–882–7377, which is the Ludwig number.

Q. Investigator, could you tell us, please, where you were physically doing this monitoring?

A. This monitoring was from a monitoring facility which is used by the Mercer County Prosecutor's Office, which is in the State of New Jersey in Mercer County.

Q. Could you tell us, please, what if anything happened as you were monitoring that particular phone terminal at 5:10 p.m.?

A. There was a call that came into that facility from a male who was subsequently identified as Frank Lang.

MR. KERRIGAN: I will object, your Honor. There is no foundation for this.

THE COURT: You mean by subsequently identified, the one of the two speakers that used that name?

THE WITNESS: If you give me a minute, sir, I will check the—

THE COURT: Yes.

THE WITNESS: Yes, sir.

THE COURT: Which of the speakers, the one who purported to be Frank Lang or the one who is purportedly talking to that individual.

THE WITNESS: Mr. Ludwig made a statement and called the other party "Frank".

was another incoming telephone call. N.T. 13. At no point during this conversation was the caller identified even by a first name. N.T. 14–16.[3]

The service used to monitor the two telephone conversations enabled one to determine numbers dialed out but not

> THE COURT: Was that the only identification, by the use of the first name?
> THE WITNESS: In this particular conversation, yes, sir.
> N.T. 5–6.

3. The conversation was as follows:

[BY DISTRICT ATTORNEY]
Q. Now, Investigator Hutchinson, could you tell us, please what transpired during that particular phone conversation? Again, you will have to be specific.
A. Yes, sir.

"Female answered the phone: 'Hello.'
"Male: 'Kathy?'
"Kathy: 'Yeah.'
"Male: 'Joe there?'
"Kathy: 'Just a minute.'
"Joe: 'Hello.'
"Male: 'Joe?'
"Joe: 'Yeah.'
"Male: 'All right, look, it'll—I'll see you tomorrow sometime.'
"Joe: 'Okay, fine.'
"Male: 'All right?'
"Joe: 'That'd be better, you know.'
"Male: 'Well, no, no, you see, this other guy, I screwed up. He said okay, don't worry about it.'
"Joe: 'Yeah, well, you know.'
"Male: 'This guy is a real nice guy, you know.'
"Joe: 'Oh, hey, look. It's—you know—it's the same usual thing, we got—'
"Male: 'I know. You don't have to explain.'
"Joe: 'Boom, bang, you know. We got it all together. It's—we got to keep things really smooth and relaxed.'
"Male: 'Yeah, well, that's what I mean. This guy is a hell of a nice guy, and I don't want to get him upset, but he did tell me it's cool.'
"Joe: 'Yeah, okay, well, listen. If you want, you could even give me, Christ, about—Christ—close to 14 of it right now, if you—'
"Male: 'No, don't even worry about it.'
"Joe: 'Yeah, okay.'
"Male: 'In fact, he just told me, you know, I knew I—I have things here and was going to, you know—I knew you probably had something and I was going—you know, hassle around but I'm trying to go out and all.'
"Joe: 'Yeah, right, right. I can understand.'
"Male: 'You don't worry about it.'
"Joe: 'Okay, that's better, and ah—see, that way nobody's really pressured for it.'

in. N.T. 17–18. There was therefore no way to determine from what telephone facility the two calls had been made. In an effort to prove that the calls had come from appellant the Commonwealth, over appellant's objection, offered the testimony of Hutchinson that on February 25, 1975, Ludwig twice placed calls to a telephone in Pennsylvania issued to a Frank Lang. N.T. 18–20. Another investigator corroborated this testimony. N.T. 34–37. Hutchinson also testified, over appellant's objection, regarding a statement given by Ludwig on October 17, 1975, to Lieutenant Golya of the Mercer County Prosecutor's Office. Hutchinson had not been present when this statement was given but the statement had been transcribed and Hutchinson had compared the transcript with the tape and found it accurate. N.T. 26. Hutchinson testified:

Q. Would you please specifically describe for us that portion of the conversation which related to Frank J. Lang?

"Male: 'Well—'

"Joe: 'I can take care of my thing tomorrow, run up there, put it where it's supposed to be and you know, it's all taken care of. Why don't you—we should—what are you going to be doing tomorrow?'

"Male: 'I'm taking the day off, why? What do you want to do?'

"Joe: 'We should get together and go over this thing just so it's done, like we—'

"Male: 'Yeah, well, all right. I'll see, Joe. Don't worry. This guy is real good for that shit, no problem.'

"Joe: 'Okay, good enough.'

"Male: 'All right.'

"Joe: 'Well, listen—'

"Male: 'Why don't you—can you see me here in the morning?'

"Joe: 'Yeah, that will be best for me to see you, long as you're not going to have a bunch of people there. I don't care.'

"Male: 'No, no, no, nobody.' "

Q. Excuse me—I think that will be sufficient for that conversation, Investigator Hutchinson.

MR. KERRIGAN [Appellant's Attorney]: Your Honor, I will move to strike that testimony as having no foundation, no connection with anything that was testified to previously, nor was the name "Frank" even used.

THE COURT: The motion is overruled.

N.T. 14–16.

492

A. "Lt. Golya: 'Mr. Ludwig, I am now going to discuss with you Frank J. Lang and ask you to mention any transactions you had with him pertaining to any controlled dangerous substance.'

"Joseph Ludwig: 'I know Frank J. Lang. I went to school with him at Council Rock, and we became pretty good friends and ah—I went to him and asked him if he could pick me up some marihuana, 25 pounds to be exact, ah—he said he could, and he told me how to do it when I was ready to do it, put it on a piece of paper and put it at such a place and he would put what I wanted in another place and I was to pick it up and put the money in another place, and it was very organized.

'I then picked up the 25 pounds and went on my way with it and stopped at Mark Sozanski's and delivered 15 pounds to him and then took ten pounds to my house, ah—and the following day, Mark Sozanski called me up to tell me that the 15 pounds were short. Saturday, ah—1975, in February, ah—Frank Lang gave me a call because I never put the money where I was supposed to have put it, and I told him then that the 25 pounds I picked up was short and we were to get together later on to discuss this problem we had.'

"Lt. Golya: 'Mr. Ludwig, where does Frank J. Lang reside or where did he reside on the day you made this transaction with him to purchase 25 pounds of marihuana from him?'

"Mr. Ludwig: 'Frank lives in Bucks County, up in Mechanicsville, Mechanicsville, right, Pennsylvania.' "

MR. FLACKS: All right. Thank you very much, Investigator Hutchinson. I have no further questions of this witness, sir.

N.T. 27–28.

Ludwig, however, did not appear at the habeas corpus hearing to identify appellant as the individual he knew as Frank J. Lang. Further, on cross examination Hutchinson admitted that he could not identify appellant as the Frank J. Lang named in the requisition papers. N.T. 28.

–2–

Given the foregoing record, this case cannot be distinguished from *Commonwealth ex rel. Walker v. Hendrick*, 434 Pa. 175, 253 A.2d 95 (1969). There the appellant challenged his extradition, asserting that the Commonwealth had failed to prove that he was the Frank Walker named in the requisition papers. At the habeas corpus hearing the Commonwealth had introduced into evidence the extradition papers and the testimony of an officer of the demanding state, who produced an authenticated record purporting to include a set of fingerprints of one Frank Walker and a document designated "prison record" relating to one Frank Walker who had escaped from custody. However, the officer could not himself identify the appellant. The Commonwealth also introduced evidence summarized by the Supreme Court as follows:

> [In addition] the Commonwealth then produced a set of fingerprints on file with the Police Department of Philadelphia and an expert witness who testified that these prints, and those previously identified as part of the records of the [demanding state], were taken from the one and same individual. On cross-examination, this witness admitted that he could not say that the Philadelphia fingerprints were taken from or were those of the appellant. *Id.*, 434 Pa. at 178, 253 A.2d at 97.

On this record the Supreme Court stated:

> It is readily clear that the evidence produced by the Commonwealth was insufficient to establish that the appellant is the individual named in the extradition warrant or is the Frank Walker who fled custody in Alabama in 1964. *Id.*

Likewise, here it is clear that the Commonwealth has failed to show that appellant is the person named in the requisition papers; it has neither shown that appellant is the "Frank" to whom Ludwig spoke on February 15, 1974, or the Frank J. Lang accused by Ludwig of selling 25 pounds of marihuana.

494 ■■■■■■■■■■■■■■■

Accordingly, the case is remanded to the court below with directions to issue the writ and discharge appellant, without prejudice to the Commonwealth's right to initiate a new extradition proceeding.

PRICE and VAN der VOORT, JJ., dissent.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.