396 A.2d 394

COMMONWEALTH of Pennsylvania ex rel. Johnny COLE-
MAN, a/k/a Bobby Coleman, a/k/a Alvan King

v.

Julius CUYLER, Superintendent, State Correctional Institution.

Appeal of Johnny COLEMAN, a/k/a Bobby Coleman,
a/k/a Alvan King.

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided Dec. 22, 1978.

276

Thomas C. Branca, Lansdale, for appellant.

Francis Fillippi, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appellant Johnny Coleman was sentenced by a Pennsylvania court in May of 1976 to serve a term of two to five years imprisonment. While appellant was serving his term, the state of New Jersey attempted to extradite him to stand trial on a 1971 New Jersey weapons charge.[1] On September 3, 1976, appellant filed a petition for a writ of habeas corpus, arguing that the Detainers Agreement,[2] which provided the procedure for his extradition, violated the constitutional guarantees of due process and equal protection. Hearing was held on the petition on October 19, 1976, after which the lower court dismissed the petition and denied the relief requested. Appeal was then taken to our court.

Article IV, section 2, clause 2 of the United States Constitution provides: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." Federal statutory law, specifically 18 U.S.C., sections 3182,[3] 3194 and 3195, contains additional provision for

1. Appellant alleges in his brief that New Jersey twice attempted to extradite him from Pennsylvania prior to his imprisonment in Pennsylvania, but failed to do so. Although the record which has been provided our court does not contain any papers related to those earlier attempts, appellant's attorney stated at the habeas corpus hearing on October 16, 1976, that appellant had been arrested on fugitive warrants in 1972 and again in 1973, and had both times been discharged.

2. Act of September 8, 1959, P.L. 829, No. 324, Sections 1–8, 19 P.S. Sections 1431–38.

3. Section 3182 provides: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which

the interstate extradition of persons charged with crime. In addition, various states have enacted the Uniform Criminal Extradition Act[4] and the Agreement on Detainers in order to provide uniform and detailed procedure for extradition. The Pennsylvania Legislature enacted the Extradition Act in 1941, the Detainers Act in 1959.

Under section 2 of the Extradition Act, it is the duty of the Governor of Pennsylvania to arrest and deliver to the agent of the executive authority of any other state any person found in Pennsylvania who is charged with having committed a crime in the demanding state. Section 3 of the Act provides that the Governor shall not recognize the demand unless it is in writing and alleges that the person was present in the demanding state at the time of the commission of a crime and that the person "fled" from the demanding state. (Exceptions to these requirements are set forth in sections 5 and 6.) The demand must be accompanied by a copy of the indictment, the information (supported by affidavit), the judgment of conviction or sentence (along with a statement by the executive authority of the demanding state that the person demanded escaped from confinement or broke the terms of bail, probation, or parole), or by an affidavit made before a magistrate in the demanding state charging the person with having committed a crime in the demanding state (along with any warrant issued thereupon). The copy of the indictment, information, affidavit, or judgment of conviction or sentence must be authenticated by the executive authority making the demand. (Section 3.)

such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

4. Act of July 8, 1941, P.L. 288, 19 P.S. section 191.1 et seq.

The Act authorizes but does not require the Governor to investigate the demand. (Section 4.) If the Governor decides that the demand should be complied with, he signs a warrant of arrest (section 7), authorizing the arrest of the person "at any time and any place [apparently including prison] where he may be found within [Pennsylvania]. . ." Before being delivered to the agent of the demanding state, the person must be taken before a judge of a Pennsylvania court of record, and must be informed of three things: the demand which has been made for his surrender, the crime with which he is charged in the demanding state, and the right "to demand and procure legal counsel." (Section 10.) If the person indicates that he wants to test the legality of his arrest, the judge must set a reasonable time within which the person may apply for a writ of habeas corpus. (Section 10.) If the person fails to inform the court that he wants to challenge the legality of his extradition, or if he does so notify the court and receives a habeas corpus hearing but fails to convince the habeas corpus court of the illegality of extraditing him, then the person will be delivered to the agent of the demanding state.

In contrast to the Extradition Act, which act's procedure should be followed in Pennsylvania regardless of whether the demanding state has also enacted that statute,[5] the Detainers Agreement applies only if the demanding state, as well as Pennsylvania, is a party.[6] Unlike the Extradition Act, the Detainers Agreement applies only to

---

5. Section 2 of the Extradition Act states: "Subject to the provisions of this act, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the executive authority of *any other state* of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this State." (Emphasis added.) Because this section specifies "any other state," rather than "any party state," Pennsylvania authorities should follow procedure set forth in the Act, whether or not the demanding state has adopted the uniform act.

6. Article VIII provides that the "agreement shall enter into full force and effect as to a party state when such state has enacted the same into law."

persons already incarcerated in the sending state. (Article I.) Under the Agreement, the demanding state's *court* having jurisdiction of the indictment, information, or complaint must approve, record, and transmit to the appropriate authorities of the sending state a written request for the prisoner. (Article IV(a)). The prisoner must be notified of the source and contents of any detainer lodged against him, and of his right to request final disposition of the charges. (Article III(c)). The Agreement provides for a thirty-day waiting period before the prisoner can be delivered to agents of the demanding state, Article IV(a), during which period the prisoner may take whatever action he deems appropriate. Such action may include filing a petition for a writ of habeas corpus (action taken by appellant in the case before us) or petitioning the Governor of Pennsylvania. In addition, during this time the Governor of Pennsylvania may on his own motion disapprove the request of the demanding state, Article IV(a), subject to the requirement of Section 3 of the Agreement (19 P.S. Section 1433) that all officers and employees of this Commonwealth enforce the Agreement and cooperate to effectuate its purposes.

Appellant argues that the Detainers Agreement violates the due process clause of the United States Constitution in that it fails to provide for a hearing, for the right to counsel, and for the right to confront and cross-examine witnesses. We are not persuaded by appellant's arguments. Our court has previously noted that, because of the summary nature of interstate rendition proceedings, an accused is not entitled to the full panoply of procedural protections which are accorded a defendant in a criminal trial. *Commonwealth v. Kulp*, 225 Pa.Super. 345, 310 A.2d 399 (1973). "The procedural safeguards required in most criminal proceedings are irrelevant to extradition proceedings." *Commonwealth ex rel. Colcough v. Aytch*, 227 Pa.Super. 527, 531, 323 A.2d 359, 361 (1974). Appellant cites no Pennsylvania cases which support his specific arguments, and we ourselves are aware of none. The various issues, however, have arisen in other jurisdictions.

In *Marbles v. Creecy*, 215 U.S. 63, 30 S.Ct. 32, 54 L.Ed. 92 (1909), a petitioner argued that his constitutional rights had been violated because he had not been before the governor of Missouri for a hearing on the extradition warrant, and because he had not been given an opportunity to meet witnesses face to face. The United States Supreme Court affirmed the lower court's denial of the petition for a writ of habeas corpus, stating: "The contention that the governor of Missouri could not act at all on the requisition papers in the absence of the accused, and without previous notice to him, is unsupported by reason or authority, and need only be stated to be rejected as unsound." 215 U.S. at 68, 30 S.Ct. at 33. In *Feilke v. Governor, State of New Jersey*, 414 F.Supp. 10 (E.D.Pa.1976), a detainer had been lodged against a prisoner by the state of New Jersey, and the prisoner had never been notified of it officially and had never been given a chance to challenge the sufficiency of the warrant. The court held that "it is a well-settled principle of law that a prisoner does not have a constitutional right to receive notice of, and participate in, extradition proceedings." 414 F.Supp. at 11. In *Hystad v. Rhay*, 12 Wash.App. 872, 533 P.2d 409 (1975), a petitioner argued that his constitutional rights had been violated because he hadn't been informed that he had a right to have counsel appointed to represent him if he was indigent, and because he hadn't been specifically notified by a court that he could file a writ of habeas corpus to contest the legality of his delivery. The Washington Court of Appeals held that the petitioner had no right to free counsel if indigent, since no loss of liberty was involved, and also that the prisoner did not have to be informed by a court of the availability of the writ of habeas corpus. In *United States ex rel. Huntt v. Russell*, 285 F.Supp. 765 (E.D.Pa.1968),[7] a petitioner for federal habeas corpus relief argued that Pennsylvania's failure to provide him with counsel at two extradition hearings violated his

---

**7.** Aff'd per curiam, 406 F.2d 774 (3rd Cir. 1969): "We subscribe in every respect to Judge Lord's disposition and his Order denying the relator's petition for the habeas corpus writ will accordingly be affirmed." 406 F.2d at 774–75.

due process rights. The court found that if forcible abduction for trial was not a due process violation, *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), then "lack of counsel on extradition certainly is not." 285 F.Supp. at 767. We find ourselves in accord with those courts which have found that the due process clause of the United States Constitution does not require that a prisoner be given an extradition hearing and provided with counsel and an opportunity to confront and cross-examine witnesses.

Appellant further argues that his due process rights were violated because he wasn't given notice of his "right" to petition the governor to disapprove extradition, and wasn't given notice of the existence of the thirty day waiting period. Although Article IV(a) of the Agreement states that the governor may, on his own motion or upon motion of the prisoner, disapprove the request for temporary custody,[8] the section does not actually confer upon a prisoner the "right" to petition the governor. The prisoner may petition the governor to disapprove extradition just as he may petition the governor to pardon him or to veto a bill or to mail him a calendar. The governor has absolutely no obligation to honor any of these requests or even to read them. We will not read into the Agreement the requirement that a prisoner against whom a detainer is lodged be informed that he can petition the governor to disapprove the demanding state's request for temporary custody. As for the thirty day waiting period, we similarly find no requirement that appellant be given notice. The waiting period is simply a step in the procedure provided by the Agreement, and appellant has no more of a due process right to notice of this step than he has a right to have outlined for him the entire procedure under the Agreement, from the form that a demand must take, to the credentials which must be present-

8. "[T]here shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

ed by an agent of the demanding state before the prisoner may be placed in his custody.

■    Appellant argues that the Detainers Agreement fails to even require notice of a detainer lodged against a prisoner.  Appellant overlooks Article III(c) of the Agreement. That section provides: "The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based."

Before turning to appellant's equal protection argument, we note an initial question as to whether the Extradition Act should be applied to sentenced prisoners if the demanding state is a party to the Detainers Agreement.  Section two of the Extradition Act would seem to make the Act applicable to sentenced prisoners.  Section two provides that the Governor of Pennsylvania shall deliver to the agent of a demanding state "any person  .  .  .  who has fled from justice and is found in this State."  "Any person" could include a sentenced prisoner.  Section nineteen, however, permits the Governor of Pennsylvania, "*in his discretion,*" either to surrender to a demanding state a person against whom a criminal prosecution is "pending" in Pennsylvania, or to hold the person until he has been "tried and discharged or convicted *and punished*" (emphasis added) in Pennsylvania.  Section nineteen would seem to give the Governor of Pennsylvania the power to hold a prisoner until he has served his full term of imprisonment.  This conflicts with the stated purpose of the Detainers Agreement, which is to provide cooperative procedure for the expeditious disposition of charges outstanding against persons incarcerated in other jurisdictions.[9]  In order to effectuate the purpose of the

9.  "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct pro-

Detainers Agreement (the more recent of the two acts), the procedure set forth in the Detainers Agreement would have to be followed whenever the demanding state was a party to the Detainers Agreement and the person sought was already imprisoned in the sending state.[10]

We note that federal case law favors use of the Detainers Agreement for obtaining sentenced prisoners whenever both the sending and receiving states are parties to the Agreement. In *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976), *aff'd*, 562 F.2d 227 (3d Cir. 1977), the federal government (a party to the Detainers Agreement) had used a writ of habeas corpus ad prosequendum to obtain a prisoner from a Pennsylvania jail, but returned the prisoner without trying him. The prisoner argued that only the Detainers Agreement could be used, and that since he had been returned without being tried, he should be entitled to dismissal of the indictment with prejudice under Article IV(e)[11] of the Agreement. The federal district court

grams of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedure. It is the further purpose of this agreement to provide such cooperative procedures." Article I.

10. Section five is the only other section of the Extradition Act which is applicable to the question of whether the Extradition Act should be applied in the case of sentenced prisoners. Section five provides that the Governor of Pennsylvania may arrange with the executive authority of any other state for the return to Pennsylvania of a person charged in this state with a crime, when the person is either imprisoned in such other state or is being held in that state under pending criminal proceedings. The section does not provide for the delivery of a Pennsylvania prisoner to the authorities of any other state.

11. "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V. (e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

agreed, stating that "the Agreement is the exclusive method for transfer of a state prisoner to another state (including, under the Agreement, the United States) for any phase of prosecution in the transferee state." 413 F.Supp. at 140. In *United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975), New York authorities had used a writ of habeas corpus ad prosequendum to transfer a prisoner from a federal prison to New York. (New York is also a party to the Detainers Agreement). The prisoner argued, unsuccessfully, in state courts for dismissal under Article IV(e) of the Detainers Agreement. The prisoner filed a habeas corpus petition in federal district court, but the petition was dismissed. On appeal, the third circuit reversed, holding that the Detainers Agreement "provides the exclusive means of transfer when it is available . . . ." 520 F.2d at 837. In *Wallace v. Hewitt*, 428 F.Supp. 39 (M.D.Pa.1976), a Pennsylvania federal district court stated: "The Extradition Act is inapplicable to persons, such as plaintiff, who are sentenced prisoners in Pennsylvania and who are facing criminal charges in another state which is also a party to the Interstate Agreement on Detainers. The Extradition Act, while containing some language possibly applicable to sentenced prisoners as well, should be construed in light of the Agreement, enacted eighteen years later in 1959." 428 F.Supp. at 40, n. 3. The court also stated: "The rights provided by the Extradition Act make much sense in the case of a person arrested to face charges in another state or in the case of an unsentenced prisoner (who might be put on parole, sentenced to time already served, etc.), but very little sense in the context of a sentenced prisoner, such as plaintiff." 428 F.Supp. at 41, n. 6. We agree with the federal courts that procedure under the Detainers Agreement should be preferred over other means of extraditing sentenced prisoners, whenever both the receiving state and sending state are parties to the Agreement.

Appellant argues that his equal protection rights under the federal and state constitutions were violated because New Jersey proceeded in this case under the terms

of the Detainers Agreement, rather than the Extradition Act, and because the latter allegedly provides greater protection. Appellant would have us adopt the reasoning of the Supreme Court of Wisconsin in *State ex rel. Garner v. Gray*, 55 Wis.2d 574, 201 N.W.2d 163 (1972):

> In the instant situation there are very real and important differences in the statutory rights to be accorded a sought-after prisoner depending upon which act is utilized by out-of-state authorities. There is no rational basis for the distinction. The prisoner who is sought under the Uniform Criminal Extradition Act is accorded the rights to be informed of the custody request and his rights by a judge of a court of record. The prisoner who happens to be sought under the Uniform Detainer Act does not have this right to a judicial notification of the detainer and rights under the Act. Indeed, under the Act itself, he is not even entitled to notification of his right to seek a writ of habeas corpus. The classification made between Wisconsin prisoners is irrational, arbitrary and unreasonable.
>
> .     .     .     .     .
>
> The Uniform Detainer Act, by not requiring a judicial hearing wherein a prisoner who is sought thereunder is explained his right to petition the governor or to bring appropriate challenging legal action, is constitutionally defective under the equal-protection clause of the United States and Wisconsin Constitutions. 55 Wis.2d at 587–88, 201 N.W.2d at 168 (footnotes omitted).

Although the Wisconsin Supreme Court found the Detainers Agreement to be constitutionally defective, it held that the defects could be cured by giving the prisoner notice and a hearing. (The court went on to find a further hearing unnecessary in that particular case "as petitioner already has an attorney, is advised of his rights, and has launched specific objections to the custody transfer." 55 Wis.2d at 590, 201 N.W.2d at 170). We disagree with the ruling of the Wisconsin Supreme Court that the Detainers Agreement is defective under the equal protection clause of the United States Constitution.

Although the procedure for extraditing a person is not identical under the Detainers Agreement and the Extradition Act, the two acts provide substantially the same protections. The Extradition Act requires that a person to be extradited from Pennsylvania to any other state be taken before a Pennsylvania court of record, where the person must be informed of the demand for his surrender, the crime with which he is charged in the demanding state, and the right "to demand and procure legal counsel." The Act does not require that the person be informed of anything prior to being taken before the court. On the other hand, the Detainers Agreement provides that the appropriate court of the demanding state must approve the written request for the prisoner's surrender, and must submit the request to the appropriate Pennsylvania authorities, who are required by the Agreement to notify the prisoner of the source and contents of the detainer and of the prisoner's right to demand a speedy disposition of the charges. An automatic thirty day waiting period then goes into effect, during which time the prisoner may not be surrendered to the demanding state. Although the Extradition Act requires the person's appearance in court, it does not provide him with the right to counsel at that time, and if the person does not speak up to challenge his extradition in some way (for example, to say that he is not the person named in the demand for extradition), then he will promptly be delivered to the demanding state without a further hearing. If the prisoner indicates that he desires to challenge the proceedings, he will be given "a reasonable time" in which to apply for a writ of habeas corpus, although the Act does not require specific notice of the availability of the writ. Overall, it can hardly be said that the Extradition Act provides greater protection for a prisoner than does the Detainers Agreement.[12] Although procedure is different under the two acts, the protection of

---

**12.** See *Wertheimer v. State*, 294 Minn. 293, 299, 201 N.W.2d 383, 386 (1972), wherein the Minnesota Supreme Court was faced with the same issue and found: "The differences are not of such magnitude or so fundamentally unfair as to deprive defendant of equal protection . . . . ."

the prisoner's rights are substantially similar; we therefore find no equal protection violation in the application of the Detainers Agreement as compared to the Extradition Act.

Appellant's arguments being without merit, we affirm the Order of the lower court denying appellant's petition for writ of habeas corpus.

SPAETH, J., files a dissenting opinion.

WATKINS, former President Judge and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

This is an appeal from the denial of a petition for a writ of habeas corpus. Appellant challenges the Interstate Agreement on Detainers, 19 P.S. § 1431, as denying due process and equal protection. The majority upholds the statute against these challenges; I should reverse on the basis of a denial of equal protection, without reaching the due process issue.

On September 17, 1972, appellant was arrested in Philadelphia on a fugitive warrant based on a weapons offense in New Jersey. After 90 days he was discharged because New Jersey failed to procure a governor's warrant as required by the Uniform Criminal Extradition Act, Act of July 8, 1941, P.L. 288, § 1, 19 P.S. § 191.1 *et seq.* In late 1973, appellant was rearrested on the same fugitive warrant but again was discharged after 90 days because no governor's warrant was lodged. In May of 1976, however, appellant was sentenced to prison in Pennsylvania on a Pennsylvania conviction. New Jersey then again sought custody of appellant, this time under the Interstate Agreement on Detainers, *supra.* Appellant petitioned the Montgomery County Court of Common Pleas for a writ of habeas corpus. The denial of this petition is now before us.

The Uniform Criminal Extradition Act, *supra,* and the Interstate Agreement on Detainers, *supra,* are both statutes under which another state may seek custody of someone in

this Commonwealth in order to bring him to trial in the other state.[1] Beyond that, the two statutes have few similarities.

First, the scope of the two statutes is different. The Detainers Act applies only to persons imprisoned in a party state. *See* 19 P.S. § 1431, art. I.[2] The Extradition Act, however, applies to all persons "found" in the Commonwealth. 19 P.S. § 191.2.[3] While the Act does not specifically say that it applies both to persons found at large and in a Pennsylvania prison, its application to prisoners may be inferred from 19 P.S. § 191.5,[4] which allows the Common-

1. The Detainers Act also provides a procedure under which a prisoner, on his own initiative, can waive delivery to the other state and force a speedy disposition of the charges there. *See* 19 P.S. § 1431, art. IV.

2. Article I provides:
    The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedure. It is the further purpose of this agreement to provide such cooperative procedures.

3. § 191.2 provides:
    Subject to the provisions of this act, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this State.

4. § 191.5 provides:
    When it is desired to have returned to this State a person charged in this State with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the Governor of this State may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be

wealth to seek custody of prisoners in other states; the Act being a Uniform Act, and therefore reciprocal among those states that have enacted it, other states may seek custody of Pennsylvania prisoners under the Act as well. In addition, it may be noted that the Act has been applied to prisoners. *See, e. g., Commonwealth ex rel. Knowles v. Lester*, 456 Pa. 423, 321 A.2d 637 (1974); *Commonwealth ex rel. Myers v. Case*, 259 Pa.Super. 196, 393 A.2d 785 (1977).

Second, the two statutes provide different remedies to the person whose custody is being sought. Under the Extradition Act, the demanding state must fulfill the requirements for a governor's warrant, 19 P.S. § 191.3,[5] and then the person arrested on the warrant must be taken before a court:

No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this State who shall inform him of the demand made for his surrender and of the crime with which he is charged and that he has the right to demand and procure

returned to such other state at the expense of this State as soon as the prosecution in this State is terminated.

5. § 191.3 provides:

No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing, alleging, except in cases arising under section 6,[1] that the accused was present in the demanding state at the time of the commission of the alleged crime and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state, and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand.

legal counsel, and, if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof and of the time and place of hearing thereon shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody and to the said agent of the demanding state.

19 P.S. § 191.10.

Under the Detainers Act, the prisoner is to be notified of the source and contents of any detainer lodged against him, 19 P.S. § 1431, art. III(c) [6]; he also has the right to petition the governor of the state in which he is imprisoned (the "sending state") to disapprove the "receiving state's" request for custody (with 30 days allowed for this process), 19 P.S. § 1431, art. IV(a).[7] While the official of the receiving state

**6.** Article III(c) provides:

(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

See also footnote 7, infra, with respect to the notice to be given the prisoner.

**7.** Article IV(a) provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: And provided further, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

The lower court construed the Detainers Act to require notice to the prisoner of the right to petition the governor.

must present on demand (presumably by prison officials) identification and evidence of authority and a certified copy of the indictment, information or complaint under which the prisoner is sought, 19 P.S. § 1431, art. V(b),[8] the prisoner has no right to be taken before a court before being delivered to the receiving state. Furthermore, although the governor of the sending state has the power to disapprove the receiving state's request for custody, nowhere does the Act set out the criteria by which the governor is to be guided in making this decision, nor is there any provision for judicial review of the governor's decision.

If the remedies provided by the two statutes were substantially the same, no equal protection violation could occur. *Commonwealth v. Webster* 462 Pa. 125, 337 A.2d 914, *cert. denied, Webster v. Pennsylvania*, 423 U.S. 898, 96 S.Ct. 201, 46 L.Ed.2d 131 (1975). It is clear, however, that the remedies are not substantially the same, but that instead, from the prisoner's point of view, the remedy provided by the Extradition Act is far superior to that provided by the Detainers Act. The petition to the governor provided by the Detainers Act will rarely result in relief. The prisoner has no way to ensure, as for example by a hearing or on judicial review, that the governor's decision will be based on the facts. Thus relief may be denied either arbitrarily or on some mistaken basis. Moreover, if the governor simply fails to act on the petition for 30 days, delivery of the prisoner to the receiving state may proceed. 19 P.S. § 1431, art. IV(d).[9]

**8.** Article V(b) provides:

(b) The officer or other representative of a state accepting an offer of temporary custody shall present the following upon demand:

(1) Proper identification and evidence of his authority to act for the state into whose temporary custody the prisoner is to be given.

(2) A duly certified copy of the indictment, information or complaint on the basis of which the detainer has been lodged and on the basis of which the request for temporary custody of the prisoner has been made.

**9.** Article IV(d) provides:

(d) Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but

While it is true that the habeas corpus hearing afforded the prisoner under the Extradition Act is in some respects summary in nature, [10] nevertheless, the prisoner is entitled to a hearing with the aid of counsel, before a court the decision of which may be reviewed on appeal to this court, and perhaps to the Supreme Court. At this hearing it must be shown that: the subject was charged with a crime in the demanding state; the subject is a fugitive from that state; the subject was present in the demanding state at the time of the commission of the crime; the papers required by § 191.3 of the Act are in order; and the person being held in the receiving state is in fact the person charged with the crime in the demanding state. *Commonwealth ex rel. Marshall v. Gedney*, 478 Pa. 299, 386 A.2d 942 (1978); *Commonwealth ex rel. Coades v. Gable*, 437 Pa. 553, 264 A.2d 716 (1970). By no means are these requirements always met. *See, e. g., Commonwealth ex rel. Walker v. Hendrick*, 434 Pa. 175, 253 A.2d 95 (1969); *Commonwealth ex rel. Edgar v. Davis*, 425 Pa. 133, 228 A .2d 742 (1967); *Commonwealth ex rel. Lang v. Case*, 257 Pa .Super. 486, 390 A.2d 1341 (1978). Indeed, in this case, the record shows that New Jersey twice was unable to lodge a governor's warrant against appellant, and although the record does not show why this was so, it is at least possible that if New Jersey had not finally been able to request appellant's custody under the Detainers Act, it might never have been able to reach appellant at all.

Given this substantial difference in remedies, the issue arises whether the Commonwealth denies equal protection of

such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery.

10. No showing of probable cause is required. *Commonwealth ex rel. Marshall v. Gedney*, 478 Pa. 299, 386 A.2d 942 (1978). Guilt or innocence may not be inquired into. 19 P.S. 191.20. Hearsay is fully admissible. *Commonwealth v. Kulp*, 225 Pa.Super. 345, 310 A.2d 399 (1973), as are statements allegedlly given in violation of constitutional rights, *U. S. ex rel. Vitiello v. Flood*, 374 F.2d 554 (2d Cir. 1967), and other illegally seized evidence. *Martin v. Maryland*, 287 A.2d 823 (D.C.App.1972). Illegal arrest and the fruit of the poisonous tree doctrine are irrelevant. *Commonwealth ex rel. Colcough v. Aytch*, 227 Pa.Super. 527, 323 A.3d 359 (1974).

the laws, under the fourteenth amendment, by affording far fewer safeguards to a prisoner whose custody is sought under the Detainers Act than to a prisoner whose custody is sought under the Extradition Act.

In *Eisenstadt v. Baird*, 405 U.S. 438, 446–47, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972), the United States Supreme Court said:

> " '[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted]. The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).' " [11]

Here, I can find no "reasonable, not arbitrary," basis for any distinction between a prisoner sought under the Extradition Act and a prisoner sought under the Detainers Act. Nor has the Commonwealth suggested any.[12] Moreover, decisions by the United States Supreme Court are forceful authority that there is no such basis. In *Baxstrom v. He-*

11. If "suspect classifications", such as race or alienage or "fundamental interests", such as marriage or travel, are involved, a different and stricter standard of review applies. *See Baltimore & Ohio R. R. Co. v. Commonwealth*, 461 Pa. 68, 334 A.2d 636, *appeal dismissed*, 423 U.S. 806, 96 S.Ct. 14, 46 L.Ed.2d 26 (1975); *Stottlemyer v. Stottlemyer*, 458 Pa. 503, 507, 329 A.2d 892, 894 (1974). Appellant does not allege that such scrutiny is required here.

12. The Commonwealth argues that there is a reasonable basis for affording more rights to persons not incarcerated, and therefore covered by the Extradition Act, than to prisoners covered by the Detainers Act, since those who are free have more to lose than those who would be in prison no matter what, the only question being where. This argument misses the point: the equal protection clause demands that the Commonwealth justify its differential treatment of *prisoners* under the two Acts.

*rold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), the Court held that a state procedure for civil commitment upon the expiration of the prison term of a mentally ill person denied equal protection because it denied the jury determination of incompetency available to persons civilly committed under other statutes, and permitted commitment to one category of institution without the judicial determination of dangerousness afforded other civilly committed persons. The Court said:

> It follows that the State, having made this substantial review proceeding generally available on this issue, may not, consistent with the Equal Protection Clause of the Fourteenth Amendment, arbitrarily withhold it from some.

383 U.S. at 111, 86 S.Ct. at 762.

*Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), is to the same effect. It involved a state sex crimes statute that permitted commitment without the jury determination available under the state's mental health statute. Citing *Baxstrom v. Herold, supra,* and remanding for an evidentiary hearing (the district court had dismissed the claim without a hearing), the unanimous Court said:

> The equal protection claim would seem to be especially persuasive if it develops on remand that petitioner was deprived of a jury determination, or of other procedural protections, *merely by the arbitrary decision of the State to seek his commitment under one statute rather than the other.*

405 U.S. at 512, 92 S.Ct. at 1053 (footnote omitted; emphasis supplied).

*See also Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

I therefore conclude that the use of the Detainers Act to deliver prisoners in the Commonwealth to another state, without affording substantially the same opportunity to contest the delivery as is afforded by the Extradition Act to

a prisoner who wishes to contest extradition, represents a denial of the equal protection of the laws.[13]

The order of the lower court should be reversed and the case remanded for further proceedings consistent with this opinion.

**13.** This conclusion has been reached in other jurisdictions. *See McQueen v. Wyrick,* 543 S.W.2d 778 (Mo., 1976); *Moen v. Wilson,* 536 P.2d 1129 (Colo.1975); *State ex rel. Garner v. Gray,* 55 Wis.2d 574, 201 N.W.2d 163 (1972). *But see State v. Thompson,* 133 N.J.Super. 180, 336 A.2d 11 (1975) (Detainers Act upheld because of reasonable classification between persons at large under Extradition Act and prisoners under Detainers Act; this argument is discussed in note 12, *supra*); *Hystad v. Rhay,* 12 Wash.App. 872, 533 P.2d 409 (1975) (held: no unfair difference between two procedures); *Wertheimer v. State,* 294 Minn. 293, 201 N.W.2d 383 (1972) (reasonable to distinguish between persons at large and prisoners; *see* note 12, *supra*).