**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Stephen S. SADVARI, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1998.

Filed Dec. 14, 1998.

Reargument Denied Feb. 16, 1999.

Dennis Woody, Media, for appellant.

Louis G. Stesis, Asst. District Atty., Media, for Com., appellee.

Before FORD ELLIOTT, J., STEVENS, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

This is a direct appeal from the judgment of sentence entered by the Court of Common Pleas of Delaware County. We affirm.

A jury convicted Appellant of driving under the influence [1] and driving with a blood alcohol content of .10% or greater.[2] The

Trial Court subsequently sentenced Appellant to a term of imprisonment of not less than thirty (30) days nor more than twenty-three (23) months. Thereafter, Appellant filed the instant timely appeal challenging the Trial Court's denial of his pre-trial motion to suppress evidence.

The Trial Court concisely summarized the facts underlying this appeal as follows:

On October 31, 1996, Pennsylvania State Trooper Chris J. Damico was on duty in a marked police vehicle patrolling Route 202 in Delaware County north of the Pennsylvania–Delaware state line. As he was traveling southbound at approximately 45–50 miles per hour, he noticed a car approaching from the rear. The Defendant was the operator and sole occupant of the approaching vehicle. Apparently, the Defendant had unwittingly approached Trooper Damico's patrol car from behind while traveling at a high rate of speed. After the Defendant realized his folly, he slammed on his brakes alongside the patrol car but nevertheless continued to pass Trooper Damico in the right lane. The officer continued to follow the Defendant who was traveling approximately 60 miles per hour in a posted 45 miles per hour speed zone. Defendant's violation of the speed limit and driving in an unsafe manner occurred in Pennsylvania. By the time he was "pulled over" the Defendant and the police car had crossed the state line. While stopped in Delaware Defendant rolled down his car window. The Trooper was greeted by the strong odor of alcohol. Defendant also exhibited slurred speech and bloodshot eyes. The driver offered that he had some drinks after work. The Trooper asked the Defendant to alight his vehicle. The officer then administered two separate types of field sobriety tests. Defendant failed three times to stand on one-leg and count. He also was unable ·to balance himself while walking heel to toe. The State Trooper placed the Defendant under arrest for driving while intoxicated. The Trooper then delivered the Defendant to Riddle Memorial Hospital where three

---

1. 75 Pa.C.S.A. § 3731(a)(1).

2. *Id.* § 3731(a)(4).

vials of blood were withdrawn for blood alcohol analysis. The results indicated that Defendant's blood alcohol content was .16%; an amount exceeding the legal limit. Defendant was transported to the District Justice in Concordville, Delaware County, Pennsylvania. There the District Justice determined that sufficient probable cause existed to justify the arrest. At the time of the suppression hearing, no evidence was presented which related to or suggested a pattern of out-of-state arrests in Delaware by Pennsylvania State Troopers.

Trial Court Opinion, 2/27/98, at 2–3.

■■■■ Appellant raises one issue for our review:

Whether the trial court erred in refusing to suppress evidence obtained as the result of an illegal arrest, in the State of Delaware, of Stephen Sadvari, a citizen of the State of Delaware, by Pennsylvania State Troopers, where the applicable provisions of the Pennsylvania Administrative Code do not authorize the arrest and where the troopers failed to bring Mr. Sadvari before a Justice of the Peace in the State of Delaware to rule on the legality of the arrest and failed to request his extradition from the State of Delaware to the Commonwealth of Pennsylvania as mandated by the provisions of the Delaware Code regulating fresh pursuit into the State of Delaware from another jurisdiction.

Appellant's Brief at 3. Without question, it is the province of the suppression court to make findings of fact and conclusions of law as to whether evidence was obtained in violation of an accused's constitutional rights. *Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678, 680 (1993). In reviewing a trial court's denial of a motion to suppress, the appellate court's responsibility is to ascertain whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Brundidge*, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993).

Two Delaware statutes are pertinent to our determination of whether the suppression court committed an error of law by failing to suppress evidence obtained as a result of Appellant's arrest. Section 1932 and 1933 of Title 11 of the Delaware Code provide as follows:

**1932. Arrest by out-of-state police.**

(a) Any member of a duly organized state, county or municipal peace unit of another state of the United States who enters this State in fresh pursuit, and continues within this State in such fresh pursuit, of a person in order to arrest the person on the ground that the person is believed to have committed a felony, a misdemeanor or a violation of the motor vehicle code in such other state, shall have the same authority to arrest and hold such person in custody, as has any member of any duly organized state, county or municipal peace unit of this State, to arrest and hold in custody a person on the ground that the person is believed to have committed a felony, a misdemeanor or a violation of the Motor Vehicle Code in this State.

(b) *This section shall not be construed so as to make unlawful any arrest in this State which would otherwise be lawful.*

11 Del.Code. § 1932 (emphasis added).

**1933. Hearing before justice of the peace; waiver of extradition.**

If an arrest is made in this State by an officer of another state in accordance with 1932 of this title, the officer shall without unnecessary delay take the person arrested before a justice of the peace of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the justice of the peace determines that the arrest was lawful the justice of the peace shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the Governor of this State, or admit the person to bail for such purpose. If the justice of the peace determines that the arrest was unlawful the justice of the peace shall discharge the person arrested.

If the person so arrested waives extradition in the manner provided by law, upon the filing of the waiver at the central office or headquarters of any local, county or state police, or at the local office of the Attorney General, the officer having the arrested person in charge may forthwith take the person from this State to the state where the arrested person is wanted for having committed the felony.

11 Del.Code § 1933.

The parties do not dispute that following Appellant's arrest, Trooper Damico violated section 1933 of the Delaware Code by failing to take Appellant before a justice of the peace or a magistrate prior to removing him from the State of Delaware. Appellant argues that Trooper Damico's violation of Section 1933 negates the lawfulness of the arrest, thereby requiring suppression of all fruits of the arrest. In support, Appellant directs our attention to this Court's recent holding in *Commonwealth v. Shaffer*, 710 A.2d 89 (Pa.Super.1998).

Certainly, the facts in *Shaffer* are quite similar to those in the instant case. In *Shaffer*, a Pennsylvania State Trooper stopped the defendant's vehicle for a speeding violation in New York State, approximately seven-tenths of a mile from the Pennsylvania border. Based upon his observations, the trooper asked the defendant to perform field sobriety tests, which the defendant failed. Thereafter, the trooper placed the defendant under arrest and transported him back to Pennsylvania and charged him with driving under the influence.

Prior to trial, the defendant filed a motion to suppress evidence based upon a violation of the New York Uniform Act on Close Pursuit, CPL 140.55. The New York Uniform Act on Close Pursuit provides, in relevant part:

2. Any peace officer of another state of the United States, who enters this state in close pursuit and continues in this state in such close pursuit of a person in order to arrest him, shall have the same authority to arrest and hold in custody such person on the ground that he has committed a crime in another state which is a crime under the laws of the state of New York, as police officer of this state have to arrest and hold in custody a person on the ground that he has committed a crime in this state.

3. If an arrest is made in this state by an officer of another state in accordance with the provisions of subdivision two, he shall without unnecessary delay take the person arrested before a local criminal court which shall conduct a hearing *for the sole purpose of determining of the arrest was in accordance with the provisions of subdivision two*, and not of determining the guilt of innocence of the arrested person. If such court determines that the arrest was in accordance with such subdivision, it shall commit the person arrested to the custody of the officer making the arrest, who shall without unnecessary delay take him to the state from which he fled. If such court determines that the arrest was unlawful, it shall discharge the person arrested.

CPL 140.55 (emphasis added).

The *Shaffer* Court analyzed the issue as one of police authority. The authority of a Pennsylvania State Trooper to make an arrest in New York State, if any, "is gained only through the grace of New York State." *Shaffer*, 710 A.2d at 91. We held that under the New York statute, "[i]f [the arrest is] not *validated* by a local criminal court, as contemplated under the Act, that authority would have to be deemed void ab initio, and therefore the arrest would be without legal authority." *Id.* at 91 n. 2 (emphasis added). Thus, to be *authorized* to make the arrest, the Pennsylvania State Trooper was required to bring the defendant before a New York criminal court to determine if the trooper complied with the requirements of the New York statute.

The state trooper in *Shaffer* failed to present the defendant in a local New York court to validate the arrest. We held that the trooper's violation of the New York statute required suppression of the evidence:

Under the terms of the Act, an individual arrested in New York by an out-of-state police officer after being closely pursued into New York must be taken before a local criminal court which shall conduct a hearing to determine if the arrest was in compliance with the Act. Since Trooper Cannon did not take appellee in the front of the local criminal court to determine if the arrest complied with the Act, the arrest violated New York's Close Pursuit Act and was therefore unlawful.

*Id.* at 91.

Although the cases appear factually similar, the New York statute differs from the Delaware statute in one significant aspect. In New York, the statute addresses the out-of-state officer's *authority* to make the arrest. To be authorized to make an arrest in New York State, a New York criminal court must first determine if the officer complied with the provisions of the New York Uniform Act on Close Pursuit. If there is no such determination, the officer is without *authority* to make the arrest.

By contrast, title 11, section 1933 of the Delaware Code is entitled "Hearing before justice of the peace; waiver of extradition." By its title and provisions, the Delaware statute is an *extradition* statute. Under the provisions of the Delaware Code, the justice of the peace is required to conduct what in essence is a hearing prior to extradition.

Moreover, section 1933 does not require a justice of the peace to determine whether the officer complied with Delaware law on fresh pursuit. In fact, section 1932 specifically negates this interpretation by stating: "This section shall not be construed so as to make unlawful any arrest in this State which would otherwise be lawful." 11 Del.Code. § 1932. Thus, the question before us is whether a violation of the section 1933, which requires a hearing prior to extradition, mandates application of the exclusionary rule. In addressing this issue, we look to Pennsylvania case law to determine whether suppression of evidence is an appropriate remedy for a violation of title 11, section 1933 of the Delaware Code. *See Shaffer*, 710 A.2d at 92 (while it is proper to defer to New York law to determine whether the New York Statute has

been complied with, Pennsylvania law determines the appropriate remedy for the violation).

██  Pennsylvania Rule of Criminal Procedure 323 permits a defendant or his attorney to "make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa. R.Crim.P. 323(a). As the Comment to Rule 323 explains:

The first revision of this rule extended its coverage to violation of the fourth, fifth and sixth amendments of the Constitution of the United States, such as those proscribed by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Later Pennsylvania cases such as *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), sanctioned the use of Rule 323 to test certain violations of Pennsylvania Rules of Criminal Procedure; however, *Commonwealth v. Murphy,* 459 Pa. 297, 328 A.2d 842 (1974), questioned whether the rule in its earlier form permitted such a challenge. The rule was therefore further revised in 1975 to permit use of the suppression motion to test admissibility of evidence where the issue is the method by which the evidence was obtained.

Pa.R.Crim.P. 323, Comment. The purpose of the exclusionary rule is "to sanction unconstitutional police procedures in a way designed to discourage such behavior and to protect citizens from such illegal conduct." *Commonwealth v. Cohen,* 529 Pa. 552, 558, 605 A.2d 1212, 1215 (1992).

██  Rule 323 permits application of the exclusionary rule for violations of the Pennsylvania Rules of Criminal Procedure. However, the exclusion of evidence for the violation of a Rule of Criminal Procedure is the "exception rather than the rule." *Common-*

*wealth v. Balliet,* 374 Pa.Super. 235, 542 A.2d 1000, 1003 (1988), *appeal denied,* 520 Pa. 613, 554 A.2d 505 (1989). The exclusion of seized evidence may be appropriate "only where the violation also touches upon fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant." *Id.* (citing *Commonwealth v. Morgan,* 517 Pa. 93, 96 n. 2, 534 A.2d 1054, 1056 n. 2 (1987)).

Here, Appellant argues that the violation of section 1933, an extradition statute, requires application of the exclusionary rule. However, Pennsylvania case law has consistently held that a violation of an extradition statute does not touch upon fundamental constitutional concerns thereby requiring application of the exclusionary rule. "The Constitution provides that extradition is summary in nature and '[t]he procedural safeguards required in most criminal proceedings are irrelevant to extradition proceedings.'" *Commonwealth ex rel. McGowan v. Aytch,* 233 Pa.Super. 66, 334 A.2d 750, 752 (1975) (footnote omitted) (quoting *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa.Super. 527, 323 A.2d 359, 361 (1974)).

 In *Coleman v. Cuyler,* 261 Pa.Super. 274, 396 A.2d 394 (1978), we held that the Due Process Clause of the United States Constitution did not require that a prisoner be given an extradition hearing, provided with counsel, and afforded an opportunity to confront and cross-examine witnesses. *Id.* 396 A.2d at 398. Likewise, in *Commonwealth ex rel. Camara v. Myers,* 201 Pa.Super. 496, 193 A.2d 642 (1963), we held that "[a] prisoner who is regularly indicted and tried under the laws of a state where the crime was committed is not deprived of due process under the Fourteenth Amendment by the manner in which he is brought from another jurisdiction." *Id.,* 193 A.2d at 643 (quoting *Commonwealth ex rel. Master v. Baldi,* 166 Pa.Super. 413, 72 A.2d 150, 154 (1950), *cert. denied,* 340 U.S. 866, 71 S.Ct. 88, 95 L.Ed. 632 (1950)). *See also Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), *rehearing denied,* 343 U.S. 937, 72 S.Ct. 768, 96 L.Ed. 1344 (1952) (forcible abduction for trial found not to be a due process violation). Based upon the foregoing, we find that Trooper Damico's failure to bring Appellant before a Delaware court for a hearing prior to extradition does not touch upon constitutional concerns, thereby requiring suppression of the evidence.

Accordingly, we hold that the Trial Court committed *no error in* denying Appellant's pre-trial motion to suppress evidence. Trooper Damico's violation of Delaware's extradition statute did not warrant automatic application of the exclusionary rule.

Judgment of Sentence is affirmed.